# Constraints Imposed by 18 U.S.C. § 1913 on Lobbying Efforts

The Anti-Lobbying Act prohibits substantial "grass roots" lobbying campaigns of telegrams, letters, and other private forms of communication designed to encourage members of the public to pressure Members of Congress to support Administration or Department legislative or appropriations proposals.

The Anti-Lobbying Act does not prohibit (1) direct communications between Department of Justice officials and Members of Congress and their staffs; (2) public speeches, appearances, and writings; (3) private communications designed to inform the public about Administration positions or to promote those positions, as long as there is no significant expenditure of appropriated funds; (4) the traditional activities of Department components whose duties historically have included communicating the Department's views to Congress, the media, or the public; or (5) communications or activities unrelated to legislation or appropriations, such as lobbying Congress or the public to support Administration nominees.

September 28, 1989

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

## I. Introduction

You have requested our guidance concerning the extent to which the Anti-Lobbying Act, 18 U.S.C. § 1913 (the "Act"), imposes constraints on activities by executive branch employees that relate to legislative matters. Section 1913, which has not been the basis of a single prosecution since its enactment in 1919, prohibits the use of appropriated funds for activities designed to influence Members of Congress concerning any legislation or appropriation.

To summarize our analysis of this statute, we offer the following guidelines for you and the Department as to what lobbying activities are permitted and prohibited.

*Permitted activities:*

1. The Act does not apply to direct communications between Department of Justice officials and Members of Congress and their staffs. Consequently, there is no restriction on Department officials directly lobbying Members of Congress and their staffs in support of Administration or Department positions.

300

2. The Act does not apply to public speeches, appearances and writings. Consequently, Department officials are free to publicly advance Administration and Department positions, even to the extent of calling on the public to encourage Members of Congress to support Administration positions.

3. The Act does not apply to private communications designed to inform the public of Administration positions or to promote those positions. Thus, there is no restriction on private communications with members of the public as long as there is not a significant expenditure of appropriated funds to solicit pressure on Congress.

4. The Act does not circumscribe the traditional activities of Department components whose duties historically have included responsibility for communicating the Department's views to Members of Congress, the media, or the public.

5. By its terms, the Act is inapplicable to communications or activities unrelated to legislation or appropriations. Consequently, there is no restriction on Department officials lobbying Congress or the public to support Administration nominees.

*Prohibited activities*:

The Act may prohibit substantial "grass roots" lobbying campaigns of telegrams, letters and other private forms of communication designed to encourage members of the public to pressure Members of Congress to support Administration or Department legislative or appropriations proposals.

If a question should arise with respect to any activity not listed here, we would be happy to analyze whether the statute applies to it.

## II. Discussion

Section 1913 of title 18 provides:

> No part of the money appropriated by any enactment of Congress shall, in the absence of express authorization by Congress, be used directly or indirectly to pay for any personal service, advertisement, telegram, telephone, letter, printed or written matter, or other device, intended or designed to influence in any manner a Member of Congress, to favor or oppose, by vote or otherwise, any legislation or appropriation by Congress, whether before or after the introduction of any bill or resolution proposing such legislation or appropriation; but this shall not prevent officers or employees of the United States or of its departments or agencies from communicating to Members of Congress on

the request of any Member or to Congress, through the proper official channels, requests for legislation or appropriations which they deem necessary for the efficient conduct of the public business.

Whoever, being an officer or employee of the United States or of any department or agency thereof, violates or attempts to violate this section, shall be fined not more than $500 or imprisoned not more than one year, or both; and after notice and hearing by the superior officer vested with the power of removing him, shall be removed from office or employment.

Several limitations on the otherwise expansive scope of this provision appear from the statute's face.

First, the statute applies only to activities "intended or designed to influence ... legislation or appropriations." Thus, lobbying activities related to other matters, such as nominations and treaties, are not subject to the statute.

Second, the statute prohibits only lobbying that is conducted in the form of the provision of a personal service or advertisement, that is presented in written form, or that is communicated by telephone or "other device." Read in context, the prohibition on other "device[s]" does not appear to prohibit speeches or other verbal communications that are not relayed by telephone. Thus, we do not believe that the statute prohibits public speeches by executive branch employees aimed at generating public support for Administration policies and legislative proposals.

Third, the statute makes clear that it does not prohibit government officials from communicating "to Members of Congress on the request of any Member or to Congress, through the proper official channels" on matters those officials "deem necessary for the efficient conduct of the public business."[1] Thus, the statute does not bar contacts between Administration officials and Congress that are initiated by Members of Congress or that relate to requests for legislation or appropriations that the executive branch employee in the fulfillment of his official duties deems necessary to conduct the public business. Consistent with this provision, this Office and the Criminal Division previously have concluded that section 1913 does not apply to the lobbying activities of executive branch officials whose positions typically and historically entail an active effort to secure public support for the Administration's

---

[1] Congressman Good, who introduced the bill, was asked whether the bill was "intended .. to prevent the employees or officers of the Government from communicating directly with their Representatives in Congress." He replied, "No, that is expressly reserved.... They have, of course, the right to communicate, just as before, with their Members of Congress." 58 Cong. Rec. 404 (1919)

legislative program.[2] Such officials include presidential aides, appointees, and their delegees in areas within their official responsibility.[3]

This construction of section 1913 is strongly supported by the statute's exemption of lobbying activities that are conducted pursuant to an "express authorization by Congress." We believe that Congress' continued appropriation of funds for positions held by executive branch officials whose duties historically have included seeking support for the Administration's legislative program constitutes "express authorization by Congress" for the lobbying activities of these officials, and thus, that their activities are exempt from section 1913.[4] Officials whose activities are covered by this "express authorization" exception to section 1913 include the President, his aides and assistants within the Executive Office of the President, Cabinet members within their areas of responsibility, and persons to whom the Cabinet official traditionally has assigned such responsibilities.[5]

The legislative history to section 1913 sheds additional light on the type of activities that Congress intended to bar. Representative Good, who introduced the bill, described the statute's purpose as follows:

> [I]t will prohibit a practice that has been indulged in so often, without regard to what administration is in power — the practice of a bureau chief or the head of a department writing letters throughout the country, sending telegrams throughout the country, for this organization, for this man, for that company to write his Congressman, to wire his Congressman, in behalf of this or that legislation. The gentleman from Kentucky, Mr. Sherley, former chairman of this committee, during the closing days of the last Congress was greatly worried because he had on his desk thousands upon thousands of telegrams that had been started right here in Washington by some official wiring out for people to write Congressman Sherley for this appropriation and for that.

[2] *See* Memorandum for Arthur B Culvahouse, Jr, Counsel to the President, from Charles J Cooper, Assistant Attorney General, Office of Legal Counsel, *Re Applicability of 18 U.S.C 1913 to Lobbying Efforts in Support of Ratification of INF Treaty* at 6 n 7 (Dec. 31, 1987) ("Culvahouse Memo"); Memorandum for John R Bolton, Assistant Attorney General, Office of Legislative Affairs, from Charles J Cooper, Assistant Attorney General, Office of Legal Counsel, *Re. Applicability of 18 U S.C. 1913 to Contracts Between United States Attorneys and Members of Congress in Support of Pending Legislation* at 5-6 (Oct. 27, 1987) ("Bolton Memo"), Memorandum for Paul Michel, Acting Deputy Attorney General, from John M Harmon, Assistant Attorney General, Office of Legal Counsel, *Re: Alleged Violations of 18 U S C 1913* at 2, 3-4 (Feb 20, 1980) ("Michel Memo"), Memorandum for Philip B Heymann, Assistant Attorney General, Criminal Division, from Thomas H Henderson, Jr, Chief, Public Integrity Section, Criminal Division at 8-10 (Oct. 15, 1979) ("Henderson Memo")

[3] *See* Michel Memo at 3.

[4] Culvahouse Memo at 6 n.7; Bolton Memo at 5-6, Henderson Memo at 8-10; Michel Memo at 2, 3-4

[5] We caution, however, against these officials engaging in "grass-roots" campaigns of the type mentioned in the legislative history to section 1913 *See infra* pp 303-04.

> Now, they use the contingent fund for that purpose, and I
> have no doubt that the telegrams sent for that purpose cost
> the Government more than $7,500. Now, it was never the
> intention of Congress to appropriate money for this pur-
> pose, and section 5 of the bill will absolutely put a stop to
> that sort of thing.

58 Cong. Rec. 403 (1919). These remarks demonstrate that Congress
was concerned about the use of appropriated funds to implement
"grass roots"[6] mass mailing campaigns at great expense.[7] Based on this
legislative history, this Office consistently has concluded that the
statute was enacted to restrict the use of appropriated funds for large-
scale, high-expenditure campaigns specifically urging private recipi-
ents to contact Members of Congress about pending legislative matters
on behalf of an Administration position. See, e.g., Michael Memo at 5
(section 1913 was intended to "prohibit the Executive from using
appropriated funds to create artificially the impression that there is a
ground swell of public support for the Executive's position on a given
piece of legislation").[8] Accordingly, we do not believe the statute
should be construed to prohibit the President or executive branch
agencies from engaging in a general open dialogue with the public on
the Administration's programs and policies. Nor do we believe the
statute should be construed to prohibit public speeches and writings
designed to generate support for the Administration's policies and leg-
islative proposals.

Because section 1913 imposes criminal penalties, it is appropriate that
it be construed narrowly. Under the widely recognized "rule of lenity,"
criminal provisions subject to more than one reasonable construction
should be interpreted narrowly, and ambiguity should be resolved in
favor of lenience. See, e.g., Bifulco v. United States, 447 U.S. 381 (1980);
3 Sutherland, Statutory Construction §§ 59.03-59.06 (4th ed. 1973). In
addition, a narrow construction of section 1913 is necessary to avoid the
constitutional issues that would arise if the section were interpreted as

---

[6] By "grass roots" lobbying we mean communications by executive officials directed to members of the
public at large, or particular segments of the general public, intended to persuade them in turn to
communicate with their elected representatives on some issue of concern to the executive. This type of
activity is to be distinguished from communications by executive officials aimed directly at the elected
representatives themselves, no matter how much incidental publicity those communications may receive
in the normal course of press coverage See Memorandum for Robert J Lipshutz, Counsel to the
President, from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, Re· Anti-Lobbying
Laws at 10 (Nov 29, 1977) ("1977 Harmon Memo") ("As long     as a federal official limits himself to pub-
lic forums and relies upon normal workings of the press, he may say anything he wishes without fear of
violating section 1913.").

[7] Our calculations indicate that an expenditure of $7500 in 1919 would be roughly equivalent to one of
$50,000 today.

[8] Culvahouse Memo at 6 n.7; Bolton Memo at 5; 1977 Harmon Memo at 10-14.

imposing a broader ban.[9] In previous analyses of this statute, we have identified at least three serious constitutional problems that would arise if section 1913 were construed as a blanket prohibition on executive branch activities relating to legislation or appropriations.

First, construing section 1913 broadly to restrict executive branch contacts with Members of Congress would interfere with the President's constitutionally mandated role in the legislative process. Article II, Section 3, Clause 1 of the Constitution provides that the President "shall from time to time give to the Congress Information of the State of the Union, and recommend to their Consideration such Measures as he shall judge necessary and expedient." This Clause imposes on the President a responsibility to recommend measures to Congress and constitutes a formal basis for the President's role in influencing the legislative process.[10] The President cannot be deprived of this capacity to explain why he believes particular measures are "necessary and expedient."

Second, legislation curtailing the President's ability to implement his legislative program through communications with Congress and the American people would infringe upon his constitutional obligation to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.[11] It would be impossible for the President to fulfill this constitutional responsibility if he could not communicate freely with those who make the laws, as well as with those whose actions are governed by them.

Third, section 1913, if construed broadly, would weaken the constitutional framework established in Article II, which in general imposes on the President the duty to communicate with the American people. The President, of course, "is a representative of the people, just as the members of the Senate and of the House are." *Myers v. United States*, 272 U.S. 52, 123 (1926). Indeed, "on some subjects ... the President, elected by all the people, is rather more representative of them all than are the members of either body of the Legislature, whose constituencies are local and not country wide." *Id.* Because of his unique position as the only elected

[9] *See* 1977 Harmon Memo, *supra* note 6 *See also* Letter for Leo Krulitz, Solicitor, Department of the Interior, from John M. Harmon, Assistant Attorney General, Office of Legal Counsel (July 18, 1978); Memorandum for Assistant Attorney General McConnell, from Deputy Assistant Attorney General Simms (Oct. 5, 1982) (forwarding a proposed draft report on S 1969, a bill to "prohibit the use of appropriations for the payment of certain lobbying costs").

[10] *See* Edward S Corwin, *The Constitution of the United States* 536 (2d ed. 1973) The early Presidents, Washington, Jefferson and Jackson among them, took an active role in their relations with Congress. "Today there is no subject on which the President may not appropriately communicate with Congress, in as precise terms as he chooses, his conception of its duty" *Id* at 537.

[11] Supreme Court precedent establishes that Congress may not interfere with the President's ability to carry out his constitutional prerogatives. *See*, for example, *Hart v. United States*, 118 U.S. 62 (1886), and *United States v. Klein*, 80 U S (13 Wall.) 128 (1872), invalidating congressional attempts to interfere with the President's pardon power. Even where, as here, Congress acts pursuant to its appropriations power, its authority is not absolute Congress may not, for example, use its appropriations power to establish a religion, *Flast v. Cohen*, 392 U.S. 83, 104-05 (1968), or to diminish the compensation of federal judges. *United States v. Will*, 449 U.S 200 (1980).

official with a truly "'national' perspective," *INS v. Chadha*, 462 U.S. 919, 948 (1983), it is necessary to the independent power of the executive branch that the President be able to communicate freely with the citizens of the United States, including on matters that relate to legislative affairs. Thus, reading section 1913 broadly to restrict all communications with the public with respect to legislation or appropriations would interfere with the executive's ability to perform his constitutionally imposed responsibilities.[12]

### III. Conclusion

We conclude that section 1913 prohibits large-scale publicity campaigns to generate citizen contacts with Congress on behalf of an Administration position with respect to legislation or appropriations. It does not proscribe lobbying activities with respect to other matters, such as nominations or treaties. It does not prohibit speeches or other communications designed to inform the public generally about Administration policies and proposals or to encourage general public support for Administration positions. In addition, the statute does not prohibit contacts between executive branch officials and Members of Congress that either were initiated by the Member of Congress, or that relate to a request for legislation or appropriations that the employee deems "necessary for the efficient conduct of the public business." Finally, the statute does not prohibit lobbying activities expressly authorized by Congress, such as activities by executive branch employees whose official duties historically have included lobbying functions, for whose positions Congress has continued to appropriate funds.

WILLIAM P. BARR
*Assistant Attorney General*
*Office of Legal Counsel*

---

[12] To discharge these responsibilities effectively, the President must be permitted to employ the services of his political aides, appointees and other officials Any restrictions on the ability of such officials to assist the President necessarily undermines the President's ability to fulfill his constitutional responsibilities and amount to restrictions on the President himself. *See* Memorandum for Steve Markman, Assistant Attorney General, Office of Legal Policy, from John O McGinnis, Acting Deputy Assistant Attorney General, Office of Legal Counsel, *Re. H R. 3400 - Application of Hatch Act to Senior Political Appointees and Presidential Aides* (Oct. 19, 1987) (Congress may not restrict the President's ability to communicate with the public by restricting those the President has chosen to assist him in this regard). In particular, the President must be permitted to employ the services of his political appointees and aides necessary to effectuate his constitutionally protected ability to communicate with his constituency concerning the decisions for which the President, as the politically accountable head of the executive branch, is alone responsible For these reasons, section 1913 must be construed narrowly as it relates to the ability of executive branch employees to communicate with the public on legislative matters