**Guillermo CASAS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 99 C 5700.**

United States District Court, N.D. Illinois.

Dec. 20, 1999.

---

"statements" to which she refers are limited to Kaiser's alleged publication that Stanford deliberately omitted Oleksiak's name from a patent.

Guillermo, Pekin, IL, pro se.

AUSA, U.S. Attorney's Office, Chicago, IL, for respondent.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

Petitioner Guillermo Casas was convicted by a jury in June 1990 and sentenced by Judge Rovner in December 1990 for conspiring to possess and possessing cocaine with the intent to distribute it. In July 1994, the Seventh Circuit affirmed his conviction and sentence, *see United States*

*v. Nava–Salazar et al.*, 30 F.3d 788 (7th Cir.1994), and we denied Casas' Motion for Immediate Deportation in July 1996. Now Casas moves this Court pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence, arguing that: (1) both his trial and appellate counsel rendered ineffective assistance; (2) the agents who arrested him did not advise him of his Vienna Convention right to consult with the Colombian consulate; (3) certain tape recordings should not have been admitted into evidence at his trial; and (4) his sentence was improperly calculated.

Before we can reach the merits of Casas' petition, we must determine whether it was timely filed. Because Casas' conviction was final prior to the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA), which amended § 2255, he had one year from the effective date of that statute—April 24, 1996—within which to file his § 2255 petition. *See Gendron v. United States*, 154 F.3d 672, 675 (7th Cir. 1998). But Casas filed his petition in August 1999, over two years after the one-year limitations period had expired, so his petition is barred from review unless he can show that "equitable tolling" is warranted. *See Taliani v. Chrans*, 189 F.3d 597, 597–98 (7th Cir.1999).

Under the judge-made doctrine of "equitable tolling," we may excuse Casas' failure to file his § 2255 petition within the limitations period only if he shows that he "could not, despite the exercise of reasonable diligence, have discovered all the information he needed in order to be able to file his claim on time." *Taliani*, 189 F.3d at 597–98. In other words, we may entertain a petition that is untimely filed when, due to extraordinary circumstances beyond a petitioner's control, he cannot reasonably be expected to file his suit on time, *see Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir.1996), and thus the " 'principles of equity would make [the] rigid application [of a limitation period] unfair.' " *Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618 (3d Cir.1998) (quoting *Shen-*

*dock v. Dir., Office of Workers' Compensation Programs,* 893 F.2d 1458, 1462–64 (3d Cir.1990) (en banc)).

■ We conclude that Casas did not exercise reasonable diligence in investigating and bringing his claims, and thus find equitable tolling to be inappropriate in this case. From the evidence presented, it appears as though Casas first took steps to file for post-conviction relief two and a half years after his appeal was denied, in late 1996 or early 1997, only a few months before the statute of limitations period was to expire for his case.[1] Casas instead filed with this Court a motion for immediate deportation, which we denied. He then elected to seek out the help of counsel rather than file the § 2255 petition *pro se,* which the instant petition—finally filed *pro se* almost three years after Casas first sought legal assistance—demonstrates he was capable of doing.

First Casas alleges that he could not have filed sooner because he only recently discovered that one of his trial attorneys, Michael Goode, was under investigation by the Attorney Registration and Disciplinary Commission (ARDC) at the time of his trial—information that he relies on in support of his ineffective assistance claims. The ARDC investigation became public as far back as 1993, however, when the ARDC Hearing Board issued its Report and Recommendation in Goode's case—

and Casas does not explain why he could not have learned about the investigation prior to the April 1997 expiration of the limitations period. We find his failure to discover this information before April 1997 particularly curious in light of the fact that Casas himself brought an ARDC charge against Goode in 1992, and therefore conclude that Casas did not diligently attempt to investigate and bring his claims.[2]

■ Casas then argues that we should excuse his untimely filing because he hired a paralegal (Lehman) associated with a Florida attorney (Shelfer) to file a § 2255 petition for him, but they failed to do so. But because prisoners do not have a constitutional right to counsel "when mounting collateral attacks upon their convictions," *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), alleged ineffective assistance of habeas counsel is not a viable basis for tolling the § 2255 statute of limitations. *See also Taliani,* 189 F.3d at 598 (observing in untimely filed habeas case that normally "a lawyer's mistake is not a valid basis for equitable tolling . . . [as] forcing the defendant to defend against the plaintiff's stale claim is not a proper remedy for negligence by the plaintiff's lawyer"). Since *Finley,* the Supreme Court has emphasized that where there is no constitutional right to counsel, "the petitioner bears the risk in federal habeas for all attorney er-

---

1. The earliest correspondence Casas submits regarding legal assistance to help him file for post-conviction relief is dated December 14, 1996. He also presents a letter purportedly written to him on February 28, 1996 by Dennis Lehman (the paralegal Casas contacted following the denial of his appeal—who, it turns out, was a convicted bank robber who had finished his prison term) discussing the possibility of representation by Florida attorney Penelope Shelfer (who was recently convicted of obstruction of justice and thus is no longer practicing law). However, the letter was addressed to Casas at the Federal Correctional Institution in Pekin, Illinois and mentions the possibility of a visit by Shelfer to meet Casas in Pekin, while Bureau of Prisons records reveal that Casas was not incarcerated at that facility until November 1996 (prior to that he was at the Marianna, Florida facili-

ty). We therefore conclude that the letter was actually written on February 18, *1997* but was incorrectly dated *1996.* We are further convinced of this mistake by Lehman's request in the letter that Casas call him collect on March 12, *1997.*

2. Casas also claims to have recently learned that his other trial attorney, Terrence Jordan, was not listed on the Illinois Supreme Court's Master Roll of attorneys entitled to practice law at the time of his trial. But evidence submitted by the Government verifies that Jordan has been listed on the Master Roll since 1976, was never removed, and has at all times since been a registered attorney in good standing. *See* Exh. C to Gov't Resp. (Oct. 8, 1999 letter from Registrar of the ARDC to Asst. U.S. Atty. Bonamici).

rors made in the course of the representation," because "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation.'" *Coleman v. Thompson*, 501 U.S. 722, 753–54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). Following this reasoning, we decline to toll the statute of limitations in Casas' case.[3]

Casas attributes his failure to timely file not only to his representation by "negligent counsel," but also to the fact that he was in jail, "weakened from illness, in transit between various institutions and hospitals from 1996 to 1997." However, courts have repeatedly held that "a prisoner may not rely on 'expected, albeit unpredictable' delays associated with prison life in seeking equitable tolling of AEDPA's statute of limitations." *See, e.g., Love v. Roe*, No. 98–0718–IEG(LAB), 1999 WL 253468, at *2 (S.D.Cal. Feb.25, 1999). While the medical records Casas submits suggest that he received a substantial amount of medical treatment in 1996 and 1997, they are otherwise illegible and fail to persuade us that Casas could not have kept up with the status of his case and filed his own 2255 petition upon discovering that one had not been filed for him. Casas may not have known that he was facing an April 1997 deadline, but "a run-of-the-mill claim of ignorance of the law is insufficient to warrant equitable tolling of § 2255's limitations period." *United States v. Griffin*, 58 F.Supp.2d 863, 869 (N.D.Ill.1999) (citing *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999)).

The record in this case does not support equitable tolling: we do not think that "despite all due diligence [Casas was] unable to obtain vital information bearing on the existence of his claim," *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir.1990), such that the "'principles of equity would make [the] rigid application [of

a limitation period] unfair.'" *Miller*, 145 F.3d at 618 (quoting *Shendock*, 893 F.2d at 1462–64). Furthermore, we do not think that Casas would prevail even if we were to consider his petition on the merits, as (from our cursory review) all of his claims appear to be either procedurally defaulted, meritless, or both. We therefore deny Casas' § 2255 petition.

■ We turn now to Casas' Federal Rule of Criminal Procedure 41(e) motion for return of the $22,802 in currency that was seized from his residence on the day of his arrest and later administratively forfeited by the Drug Enforcement Administration ("DEA"). As the district court where Casas was tried, we have jurisdiction over this collateral motion—which we treat as a civil equitable action despite its having been styled as a Rule 41(e) motion—even though the underlying criminal proceedings in this case have been concluded. *See, e.g., Thompson v. Covington*, 47 F.3d 974, 975 (8th Cir.1995); *United States v. Giovanelli*, 998 F.2d 116, 118–19 (2d Cir.1993). But our jurisdiction is limited to consideration of the *procedure* by which the forfeiture was effected; we may not review the merits. *See Linarez v. U.S. Dept. of Justice*, 2 F.3d 208, 211–12 (7th Cir.1993); *Toure v. United States*, 24 F.3d 444, 445–46 (2d Cir.1994) (although initiation of administrative forfeiture proceedings divests district courts of jurisdiction over the property unless defendant contests forfeiture within 20 days of first publication of notice, courts retain jurisdiction to correct any procedural deficiency they find). Casas had an opportunity to challenge the forfeiture on substantive grounds by filing a claim with the DEA right away, but instead he elected to submit a Petition for Remission of Forfeiture to the DEA, which was denied; administrative forfeiture occurs by default in such circumstances. For this reason we dis-

---

**3.** Even if egregious attorney conduct could be considered a compelling circumstance for tolling the statute of limitations, the gaps in the evidence Casas presents would keep us from doing so in this case. While Casas claims that Lehman and Shelfer promised to file his 2255 petition and did not, his exhibits do not convince us that they breached such promise.

miss Casas' claim that the currency forfeiture was not supported by probable cause.

■ Casas does claim that he was denied due process because he did not receive adequate notice of the forfeiture or an opportunity for a hearing, but this claim is time-barred. Neither the Supreme Court nor the Seventh Circuit have decided what statute of limitations applies to a procedural challenge to an administrative forfeiture, but the longest limitations period that could possibly govern is the six-year "catch-all" for civil actions against the United States found in 28 U.S.C. § 2401, and other courts have applied it to actions such as this one. *See, e.g., Polanco v. U.S. Drug Enforcement Admin.*, 158 F.3d 647, 652–53 (2d Cir.1998). Casas' claim accrued when he discovered, or had reason to discover, that the currency had been forfeited in a procedurally deficient manner. *See id.* at 654. Officially, this was on April 17, 1990, when Casas was informed that the currency had been forfeited and that his petition for remission had been denied.[4] So Casas had until April 17, 1996 to raise the procedural challenges to the forfeiture that he raises today, over nine years after the administrative forfeiture was final. We therefore dismiss Casas' motion for return of property.

Finally, we deny Casas' motion for production of records as moot, because the Assistant United States Attorney reported that she has already furnished Casas with duplicates of both the forms and the cassette tapes he requested, and we deny Casas' demand for production of the original tape recordings in lieu of copies. It is so ordered.

---

4. Arguably, the claims made in Casas' Petition for Remission of Forfeiture demonstrate that Casas knew as early as February 1, 1990—the date on which that petition was filed—that forfeiture proceedings had been initiated, that he had a right to object to the forfeiture, and that arguments could be made on both notice and probable cause grounds. *See* Petition for Remission of Forfeiture (Exh. G to Gov't Resp. to Motion for Return of Property).