UNITED STATES of America

v.

Jonathan J. POLLARD, Defendant.

No. CR.86–2027 TFH.

United States District Court,
District of Columbia.

Nov. 12, 2003.

Jonathan J. Pollard, Butner, NC, Counsel for Defendant Pollard.

Eliot Lauer, Esq., Jacques Semmelman, Esq., New York, NY, Government Counsel.

AUSA Robert D. Okun, Special Proceedings Section, AUSA Steven W. Pelak, Transnational/Major Crimes Section, Washington, Court Security Officer.

Michael P. Macisso, Washington.

## MEMORANDUM OPINION

HOGAN, Chief Judge.

Pending before the Court is Defendant Pollard's Motion for "Reconsideration of the Court's August 7, 2001 Memorandum Opinion and Judgment, or in the Alternative, for Issuance of a Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)" ("Mot."). Having carefully considered Judge Johnson's opinion of August 7, 2001, the numerous filings of both parties, the oral argument heard in open court on September 2, 2003, and the pertinent facts and case law, the Court will deny Mr. Pollard's motion.

## I. PROCEDURAL HISTORY

The procedural history in this case is quite extensive, and is important as it is applies to the instant motion. On June 4, 1986, Mr. Pollard pleaded guilty to one count of conspiracy to commit espionage, in violation of 18 U.S.C. § 794(c). On March 4, 1987, the Honorable Aubrey E. Robinson, Jr. sentenced Mr. Pollard to a term of life imprisonment. At those proceedings, Mr. Pollard was represented by Richard A. Hibey. An appeal was not taken.

On March 12, 1990, Mr. Pollard filed his first 28 U.S.C. § 2255 motion, alleging that the government breached its plea agreement with him by arguing for a life sentence, by not limiting its allocution to the facts and circumstances of the case, and by failing to adequately advise the Court of the extent and value of Mr. Pollard's cooperation. He also alleged that the government impermissibly argued at sentencing that Mr. Pollard breached the plea agreement when he gave an unauthorized interview to journalist Wolf Blitzer. Finally, Mr. Pollard asserted that his plea was not voluntary because he was required to plead guilty in order for his wife to do so. On September 11, 1990, Judge Robinson summarily denied Mr. Pollard's motion and held that the government did not breach the plea agreement, the government did not make improper arguments at sentencing, and that Mr. Pollard's plea was voluntary. *See United States v. Pollard*, 747 F.Supp. 797, 802–06 (D.D.C.1990). For purposes of this first § 2255 motion, Mr. Pollard was represented by Hamilton P. Fox, III.

On March 20, 1992, the D.C. Circuit Court of Appeals upheld the summary de-

nial of Mr. Pollard's first § 2255 motion, holding, *inter alia*, that the government did not breach the plea agreement and that Mr. Pollard's plea was voluntary even though it was wired to his wife's plea. *See United States v. Pollard*, 959 F.2d 1011 (D.C.Cir.1992), *cert. denied*, 506 U.S. 915, 113 S.Ct. 322, 121 L.Ed.2d 242 (1992). Specifically, the D.C. Circuit held that the government did not breach the provisions of the plea agreement requiring the government to outline the extent and value of Mr. Pollard's cooperation, and "[found] it unnecessary to decide whether the government breached" the provision of the plea agreement requiring it to limit its allocution to the "facts and circumstances" of the case, because Mr. Pollard "would [not] be entitled to relief under § 2255." *Id.* at 1028. Indeed, even if "[t]he government's allocution in Pollard's case ... had crossed the limits of the plea agreement, [it] falls far short of a 'fundamental defect' in Pollard's sentencing that resulted in a 'complete miscarriage of justice'; nor was it 'an omission inconsistent with the rudimentary demands of fair procedure.'" *Id.* The Court of Appeals continued:

> [W]e think that Pollard's claims of government breaches of the plea agreement, which appear to us to be very much the product of revisionist thinking on the part of Pollard and his new counsel, are brought far too late, in this collateral proceeding, to enable Pollard to prevail. Pollard waited three years before complaining about the government's allocution.... The sentence Pollard received was within the power of the district court to impose, both by the

terms of the statute under which he pleaded guilty and by the explicit terms of the plea agreement. Pollard has never denied that he is guilty of the crimes for which he was imprisoned. Nor is there any allegation that Pollard's guilty plea was induced by the promise of a specific sentence, which he subsequently did not receive. Under such circumstances, it cannot be said that justice completely miscarried.

*United States v. Pollard*, 959 F.2d 1011, 1030 (D.C.Cir.1992) (footnote and citations omitted).[1]

On October 13, 1992, the Supreme Court denied Mr. Pollard's petition for a writ of certiorari. During the appeal of the denial of his first § 2255 motion, Mr. Pollard was represented by Theodore Olson, John H. Sture, Theodore J. Boutrous, Jr., and Hamilton P. Fox, III.

On September 20, 2000, approximately 13 years after he was sentenced, Mr. Pollard filed a "motion for resentencing," which was his second § 2255 motion, arguing this time that his sentencing attorney (Mr. Hibey) was ineffective because he: (1) failed to notice an appeal; (2) failed to argue that the government breached its plea agreement at sentencing; (3) failed to request an adjournment of the sentencing hearing after receiving the Weinberger Supplemental Declaration ("Supplemental Declaration"); (4) failed to adequately rebut the assertions contained in the Supplemental Declaration or demand that the government prove the allegations in the Supplemental Declaration at the sentencing hearing; (5) failed to inform the sentencing judge that Mr. Pollard had been

---

1. The Court of Appeals's rationale is supported by the fact that over the course of his entire case Mr. Pollard has had a phalanx of well known, respected lawyers of the highest reputations, to include: Hamilton P. Fox, III; Richard A. Hibey; Marcia R. Isaacson; now-Solicitor General Theodore B. Olson; John H. Sturc; Theodore J. Boutrous, Jr.; Professor Alan Dershowitz; former Supreme Court Justice Arthur Goldberg; Nancy Luque; Larry Dub; and a large number of attorneys who have provided legal assistance in their role as amicus curiae. *See Pollard*, 161 F.Supp.2d at 7.

authorized to provide an interview to journalist Wolf Blitzer or demand a hearing at which the government would have to prove that the interview was unauthorized; (6) failed to demand a hearing at which the government would have to prove that Mr. Pollard disclosed classified information during the second Blitzer interview; and (7) breached the attorney-client privilege by informing the sentencing judge that Mr. Pollard had given the Blitzer interviews against counsel's advice.

On November 28, 2000, the government filed a motion to dismiss Mr. Pollard's second § 2255 motion on the grounds that it was barred by the one year statute of limitations contained in § 2255. On August 7, 2001, the Honorable Norma Holloway Johnson dismissed Mr. Pollard's second § 2255 motion because it was time-barred and because the D.C. Circuit had not authorized the filing of Mr. Pollard's successive motion. *See United States v. Pollard*, 161 F.Supp.2d 1, 13 (D.D.C.2001). For purposes of this second § 2255 motion, Mr. Pollard was represented by his current counsel, Eliot Lauer and Jacques Semmelman.

On August 17, 2001, Mr. Pollard noticed an appeal of Judge Johnson's decision. On October 17, 2001, the Court of Appeals granted a motion to hold any such appeal in abeyance pending disposition of the pending motions in the district court, and this Court's determination of whether a certificate of appealability is warranted.

On October 5, 2001, Mr. Pollard filed the instant motion for reconsideration or, in the alternative, request for issuance of a certificate of appealability ("COA"), argu-ing, based on essentially the same facts and the same case law presented in his original motion and reply before Judge Johnson, that Judge Johnson erred as a matter of law in dismissing his motion as a successive and time-barred § 2255 motion, and arguing that reasonable jurists would find Judge Johnson's opinion and judgment to be debatable. Mr. Pollard supports his instant motion with a declaration from former United States District Judge George N. Leighton, who served as a District Judge in the Northern District of Illinois from 1976 to 1987. In his declaration, retired Judge Leighton expresses his disagreement with Judge Johnson's ruling, and opines that reasonable jurists would find Judge Johnson's ruling to be debatable.

## II. PRELIMINARY MATTER: AUTHORIZATION TO FILE

 As an initial matter, the Court notes that Mr. Pollard has not specified any statute or court rule allowing him to file a motion for reconsideration after the denial of a § 2255 motion.[2] A motion to reconsider a § 2255 motion is to be treated as a "[Fed.R.Civ.P.] 59(e) motion if filed within 10 days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter." *United States v. Clark*, 984 F.2d 31, 32 (2nd Cir.1993). Since the instant motion for reconsideration was filed more than 10 days after Judge Johnson's memorandum opinion and judgment, this Court will treat it as a Rule 60(b) motion.

Because his argument rests entirely on the premise that Judge Johnson commit-

---

**2.** As much of the argument in both Mr. Pollard's § 2255 motion before Judge Johnson and his instant motion for reconsideration revolves around whether it was excusable for Mr. Pollard to follow certain procedural requirements in litigating the post-conviction aspects to his case, the Court finds it puzzling that—even after it was brought to his attention in the government's opposition—Mr. Pollard would choose not to address in his reply the procedural issue of authorization to file.

ted legal error when she denied his second § 2255 motion, subsections (b)(1) and (b)(6) are the only provisions of Rule 60 that arguably provide this Court with authority to grant Mr. Pollard's motion for reconsideration. Rule 60(b)(1) and (b)(6) state in relevant part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment." Circuit courts of appeals "have split over whether errors in legal reasoning may be corrected by Rule 60(b)(1) motions." *Ctr. for Nuclear Responsibility, Inc. v. United States,* 781 F.2d 935, 939 (D.C.Cir.1986); *see also id.* at 939–40 nn. 6–7, 9 (citing cases and law review articles for both positions). While the D.C. Circuit Court of Appeals has indicated that a court could adopt "the more liberal interpretation of Rule 60(b)(1), allowing correction of substantive legal errors during the appeal period, [this would involve] the unique situation where the controlling law of the circuit had changed between the time of the judgment and the time of the motion." *Id.* at 940. In the case at hand, Mr. Pollard has not alleged, because he cannot, that the controlling law of this circuit has changed between the time of Judge Johnson's August 7, 2001 opinion and judgment and his October 5, 2001 motion for reconsideration. Although our own court of appeals has chosen not to address the issue of whether Rule 60(b)(1) could be extended "to allow corrections of

substantive legal errors where no such change in the law of the circuit has occurred," *see id.,* for the following reasons this Court sides with those circuit courts that oppose the use of Rule 60(b) to correct legal errors.[3]

First, allowing substantive modifications to be made under Rule 60(b) eviscerates the 10–day time limitation imposed by Rule 59(e) on motions to "alter or amend the judgment." Moreover, use of Rule 60(b) to correct substantive legal errors indirectly extends the appeal period. Because an unsuccessful litigant could appeal the denial of his Rule 60(b) motion, he is thus allowed an extension of time during which to file an appeal and to gain review of the District Court's judgment.

*Id.* (footnote omitted). Rule 60(b)(1), therefore, does not afford Mr. Pollard a legal basis for relief.

Furthermore, motions to reconsider under Rule 60(b)(6) apply only to "extraordinary situations" and "should be only sparingly used." *Twelve John Does v. Dist. of Columbia,* 841 F.2d 1133, 1140 (D.C.Cir. 1988) (citations omitted). Indeed, "[t]here must be an end to litigation someday...." *Good Luck Nursing Home, Inc. v. Harris,* 636 F.2d 572, 577 (D.C.Cir.1980) (*citing Ackermann v. United States,* 340 U.S. 193, 198, 71 S.Ct. 209, 95 L.Ed. 207 (1950)). Relief under Rule 60(b)(6) is only allowed "[w]hen a party [such as Mr. Pollard] timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust...." *Good Luck,* 636 F.2d at 577 (citations omitted). As the pleadings sub-

---

**3.** *See, e.g., Elias v. Ford Motor Co.,* 734 F.2d 463, 467 (1st Cir.1984) (Even if a Rule 60(b)(1) motion is timely filed, " 'mistake, inadvertence, surprise, or excusable neglect' does not include errors of law."); *McKnight v. United States Steel Corp.,* 726 F.2d 333, 338 (7th Cir.1984) ("Rule 60(b) is not intended to

correct errors of law made by the district court in the underlying decision which resulted in final judgment."); *cf. Martinez–McBean v. Gov't of the Virgin Islands,* 562 F.2d 908, 912 & n. 4 (3d Cir.1977) ("[L]egal error does not by itself warrant the application of Rule 60(b)").

mitted as part of this motion for reconsideration are devoid of any such fact, Mr. Pollard has not satisfied his burden and Rule 60(b)(6) provides him with no basis for relief.

In sum, the Court finds that Mr. Pollard has no avenue for relief under Rule 60(b). However, because he has raised many other claims that the Court finds are without merit, the Court will set forth its further rationale why Mr. Pollard's motion should be denied.

## III. DISCUSSION

### A. Request for Evidentiary Hearing

An evidentiary hearing is only required where "the § 2255 motion [or a subsequent motion for reconsideration] raises 'detailed and specific' factual allegations whose resolution requires information outside of the record . . . ." *Pollard,* 959 F.2d at 1031 (*citing Machibroda v. United States,* 368 U.S. 487, 494, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962)). "Even if the files and records of the case do not clearly rebut the allegations of the prisoner, no [evidentiary] hearing is required where his claims are 'vague, conclusory, or palpably incredible.' " *Id.* (citing *Machibroda,* 368 U.S. at 495, 82 S.Ct. 510). The Court benefitted from the able and well-prepared oral argument on September 2, 2003, as the parties had the opportunity to point out any nuances in the pleadings and to emphasize their arguments. However, as Judge Johnson found previously, this Court finds that the instant motion does not meet the standard for an evidentiary hearing as the resolution of the issues at hand do not require information outside of the record. Accordingly, the Court denies the request for an evidentiary hearing.

### B. Motion for Reconsideration

Mr. Pollard claims that Judge Johnson "made several dispositive factual determi-

nations. . . . [and] did so without conducting an evidentiary hearing. In certain instances, [Judge Johnson] made findings of fact that were unsupported by *any* evidence in the record." Mot. at 2. Mr. Pollard's motion and reply ask this Court to reconsider Judge Johnson's decision and allow an evidentiary hearing on "the following fundamental factual determinations in [Judge Johnson's August 7, 2001] Opinion," as follows:

(a) The reason of the failure of habeas counsel, Hamilton Fox III, to raise claims of ineffective assistance in the 1990 Motion despite Richard Hibey's numerous deficiencies at, during, and immediately after sentencing;

(b) On a claim-by-claim basis, when Pollard first knew the facts underlying each of his claims for ineffective assistance, including, without limitation, his claims based upon Hibey's failure to demand an evidentiary hearing on disputed issues at sentencing, and Hibey's failure to put the government to its proof on such issues;

(c) Why Pollard did not learn the facts underlying his claims until 2000, including the effect of the government's and Fox's false praise of Hibey on Pollard's state of mind;

(d) What further acts of due diligence would a prisoner in Pollard's situation have undertaken that would have revealed the facts underlying each of his claims prior to 2000; and

(e) The reason other attorneys for Pollard did not recognize Fox's deficiency in failing to inform Pollard that he had viable claims for ineffective assistance of counsel, and the reason they did not recognize that Pollard still had such claims to assert.

*Id.*

The Court need not reach any of these issues, however, for Mr. Pollard's motion is

time-barred and the statute of limitations should not be tolled.[4] In both his motion and his reply, Mr. Pollard focuses not on these crucial issues—perhaps intentionally so because the facts and the prevailing case law weigh strongly against moving beyond the procedural bar in this matter—but on asking this Court to hold an evidentiary hearing and rule on the above-listed five issues of fact. *See, e.g.,* Mot. at 2; Reply at 1–3. In support of his arguments, Mr. Pollard has enlisted the aid of retired federal district court Judge George N. Leighton. In his declaration submitted as part of Mr. Pollard's motion, Judge Leighton believes that "jurists of reason would find it at least debatable whether [Judge Johnson] erred in dismissing the motion without evidentiary hearing based upon failure to satisfy the [*McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)] 'cause' requirement" and that "jurists of reason would find it at least debatable whether [Judge Johnson] erred in finding, without evidentiary hearing, that [the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')] statute of limitations bars relief." Leighton Decl. at 12, 24.

This Court respectfully disagrees with former Judge Leighton, for the Supreme Court has definitively directed how courts should proceed in situation such as this:

> Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could *not* conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.

... The recognition that the "Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of" allows and encourages the court to first resolve procedural issues.

*Slack v. McDaniel,* 529 U.S. 473, 484–85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (*citing Ashwander v. TVA,* 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring)) (emphasis added). In light of the Supreme Court's clear ruling, the Court cannot agree with retired Judge Leighton that a jurist of reason could find that any of Judge Johnson's rulings were incorrect. Accordingly, the Court need not delve into resolving Mr. Pollard's alleged claims except to incorporate the facts and allegations as necessary to demonstrate how Judge Johnson properly dismissed Mr. Pollard's motion for resentencing as untimely and successive.

**1. Mr. Pollard's Motion for Resentencing Is Time Barred**

Having carefully reviewed Judge Johnson's thorough discussion of the statute of limitations as it applies to Mr. Pollard's case, this Court approves of, adopts, and incorporates the same herein. *See Pollard,* 161 F.Supp.2d at 8–12. However, the Court finds that it would be instructive to elaborate on exactly why Judge Johnson properly dismissed Mr. Pollard's motion on the grounds that it was barred by the statute of limitations.

■ To begin, it is clear that the statute of limitations under § 2255(4)[5] begins on

---

4. Further for, as discussed *infra,* a defendant is not entitled to the assistance of counsel in connection with a § 2255 motion in the first place.

5. 28 U.S.C. § 2255(4) provides that "[a] 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

. . .

the date on which the facts supporting the claim or claims presented could have been discovered through due diligence, not on the date that a defendant discovers the legal significance of those previously known facts. The case law is legion in this regard. *See, e.g., Brackett v. United States,* 270 F.3d 60, 68–69 (1st Cir.2001) ("the operative date under § 2255(4) is . . . the date on which the defendant learned, or with due diligence should have learned, the facts supporting his claim . . . ."; In finding that 28 U.S.C. § 2254 (state habeas provisions) should be interpreted the same way that courts interpret § 2255 (federal habeas petitions), the First Circuit noted that the reference in § 2255(4) "was to basic, primary, or historical facts," and not to "court rulings or legal consequences of the facts."); *Owens v. Boyd,* 235 F.3d 356, 359 (7th Cir.2000) ("Section 2244(d)(1)(D) follows the norm for a federal statute of limitations. Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance. If Section 2244(d)(1) used a subjective, rather than an objective standard, then there would be no effective time limit . . . ."); *Hasan v. Galaza,* 254 F.3d 1150, 1154 n. 3 (9th Cir.2001) (defendant did not need "to understand the legal significance of those facts—rather than simply the facts themselves—before the due diligence (and hence the limitations) clock started ticking").

Mr. Pollard vigorously disputes Judge Johnson's rejection of his contention that a defendant's discovery of the prevailing professional legal norms constitutes "facts" under § 2255(4). Reply at 13. He contends that

[i]t is not our argument that, where the facts are known, the statute of limita-

tions does not begin to run until the defendant comes to understand the "legal significance" of those facts. Rather, it is our position . . . that the 'facts' supporting a claim of ineffective assistance include not just the underlying *events* (and non-events), but also include the pertinent norms of the legal profession from which counsel deviated. These professional norms are *facts.*

*Id.* He also states that "[i]n 1992 . . . . [a]fter the Supreme Court denied [my] petition for certiorari, I assumed I had no further steps still available within the legal system. I did not know that there were effective legal arguments that Mr. Fox had not made that could still be presented." Pollard Decl. of 08/28/00 (filed 09/20/00) ¶ 53. His "awareness of a possible deficiency in Hibey's performance was triggered, shortly before March 2000, only when a fellow inmate, Edward Jason Robinson, told Pollard he had read a published opinion in Pollard's case, and expressed surprise that apparently no appeal had been taken from the sentence." Def.'s Supp. Reply of June 5, 2002 at 3 (citing Pollard Decl. ¶ 55).

Judge Johnson correctly dismissed these arguments, for Mr. Pollard has indeed taken a sentence in *Strickland* out of context in order to support his claim that professional norms are facts. *See* 161 F.Supp.2d at 9–10. Further, as Judge Johnson determined unequivocally after reviewing Mr. Pollard's own declaration, Mr. Pollard was well aware of the facts underlying his sentencing and appeals claims more than a decade before he filed his motion for resentencing. *See, e.g., Pollard,* 161 F.Supp.2d at 9, 9 n. 5. Even if this Court were to hold that prevailing professional norms are facts—which it does not—Mr. Pollard has already admitted that he knew

---

(4) the date on which the facts supporting the claim or claims presented could have been

discovered through the exercise of due diligence."

of the alleged acts or omissions well before May 2000. *See id.* To characterize them as "professional norms" in an attempt to circumvent the procedural time bars in his case is a play on semantics. When examined in light of *Strickland, Brackett, Owens,* and *Hasan,* it is clear that Judge Johnson correctly ruled that Mr. Pollard's motion was barred by the one year statute of limitations found in § 2255.

■ The next issue then becomes whether recent case law erodes Judge Johnson's ruling that Mr. Pollard failed to act with "due diligence." The Seventh Circuit dealt with whether a defendant had acted with due diligence in filing an appeal, even though he spoke little English, had a copy of the docket sheet, and was transferred to another prison approximately one year after his sentencing. *Montenegro v. United States,* 248 F.3d 585, 589 (7th Cir. 2001) (overturned on other grounds). That court found that " '[t]he proper task ... is to determine when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed.' " *Id.* at 592 (citation omitted). "That an appeal had not been filed was a matter of public record, 'which reasonable diligence could have unearthed.' " *Id.* at 593 (citing *Owens,* 235 F.3d at 360).[6] Likewise, Judge Johnson correctly found that Mr. Pollard had failed to exercise due diligence since he waited more than thirteen years to file a motion challenging his attorney's performance at sentencing and his attorney's failure to note an appeal. *See Pollard,* 161 F.Supp.2d at 11. This is

particularly so given the fact that all of the actions supporting Mr. Pollard's claims were either committed at the time of his sentencing—and therefore in his presence—or within ten days of his sentencing when his sentencing counsel did not note an appeal. As a matter of law, Mr. Pollard's alleged failure until the passage of thirteen years to recognize the legal significance of any alleged errors his attorney may have made, simply does not constitute the "due diligence" required by § 2255.

*Aron v. United States,* 291 F.3d 708 (11th Cir.2002), is another recent case dealing with the issue of due diligence in a § 2255 context. "Before AEDPA was enacted [on April 24, 1996], there was no limitation period for filing a petition pursuant to § 2255." *Id.* at 712. However, it " 'would be unfair and impermissibly retroactive' to require [a defendant] to have exercised due diligence before there was any legal requirement that he do so. We therefore hold that a petitioner's failure to exercise due diligence before AEDPA was enacted cannot support a finding that a petition fails to satisfy the timeliness requirement of § 2255(4)." *Id.* at 713. Putting aside momentarily the hurdles Mr. Pollard faces regarding "second or successive motions" (discussed *infra*), *Aron* would only lend support to Mr. Pollard's argument if he had filed his motion within one year of the AEDPA's enactment. Mr. Pollard attempts to escape the limitation of this one year post-AEDPA grace period by speculating that "[t]he enactment of AED-

---

**6.** The Seventh Circuit Court of Appeals in *Montenegro* "remand[ed] the case to the district court for an evidentiary hearing on the issue of [Petitioner] Montenegro's diligence." *Montenegro,* 248 F.3d at 589. In that case "the record [was] devoid of adequate information to determine the merits of the appeal" of the questions of when Montenegro's one year time limit began to run and whether his § 2255 motion had been filed within that time

period. *Id.* at 589. In Mr. Pollard's case, however, the record is quite clear as to the dates at which the one year time limit began to run and how this affected Mr. Pollard's second § 2255 motion which Judge Johnson denied on August 7, 2001. Accordingly, in addition to the reasons cited above regarding the denial of Mr. Pollard's request for an evidentiary hearing, no evidentiary hearing is necessary.

PA in 1996 did not cause Pollard—and would not have caused a hypothetical reasonable prisoner—to spontaneously start questioning the Government's praise of Hibey made six years earlier." Def.'s Supp. Reply of June 5, 2002 at 3. However, neither federal statute nor case law supports this position.

The doctrine of equitable tolling does not help Mr. Pollard here either, for

> [n]othing in [*Aron*] changes the longstanding diligence obligation. . . . Unlike this *statutory* diligence requirement [in § 2255], however, *equitable* tolling has always required a showing of diligence. While we could not require a petitioner to comply with a statutory mandate that did not exist at the time of his conduct, there is nothing at all impermissible or retroactive about requiring a petitioner seeking the equitable relief of tolling to comply with judicially-crafted standards that were long and firmly established by the time of the conduct in question.

*Drew v. Dep't of Corr.*, 297 F.3d 1278, 1290 n. 5 (11th Cir.2002). Indeed, Mr. Pollard is comparable to the petitioner in *Drew*, since "the petitioner in *Aron* displayed diligence both before and after the enactment of the statute, while in this case Drew showed precious little diligence at any time."

*Baldayaque v. United States*, 338 F.3d 145 (2d Cir.2003) is similarly unavailing for Mr. Pollard. "[I]t is not inconsistent to say that attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations period while acknowledging that at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." *Id.* at 152. The attorney in *Baldayaque* failed to file a § 2255 petition at all, failed to do any legal research on behalf of Mr. Baldayaque, never spoke with or met Mr. Baldayaque, and

failed to keep his client reasonably informed about the status of his case. *See id.* These "actions, taken together, were extraordinary." *Id.* Mr. Pollard can validly claim no circumstances that are similar. Rather, he speculates that Hamilton Fox's alleged deceptions and concealment about Richard Hibey's conduct violated ethical obligations owed to Mr. Pollard. *See* Def.'s Supp. Reply of August 20, 2003 at 3. To the contrary, Mr. Pollard's habeas attorney filed an extensive § 2255 motion and memorandum of law, and a reply brief, in which he vigorously argued on behalf of Mr. Pollard. When that § 2255 motion was denied, this same attorney filed an appeal from the denial of that motion. Mr. Pollard's is not a case where the habeas attorney "abandoned" the defendant. On these grounds, *Baldayaque* is easily distinguishable from the case at hand.

## 2. Mr. Pollard's Motion for Resentencing Was Properly Dismissed As A Successive Motion

As the Court did with the entire memorandum opinion of August 7, 2001, the Court has carefully reviewed Judge Johnson's thorough discussion of the AEDPA and her conclusion that Mr. Pollard's second § 2255 motion (i.e., the motion for resentencing) would have failed the pre-AEDPA "cause and prejudice" test, so that this second motion was properly subject to AEDPA's successive motions provisions. This Court approves of, adopts, and incorporates the same herein. *See Pollard*, 161 F.Supp.2d at 3–8.

Judge Johnson carefully analyzed Mr. Pollard's allegations that he was provided post-conviction ineffective assistance of counsel, and she found them to be without merit. *Id.* at 5–8. While this Court agrees with that assessment, the Court also finds that a defendant is not entitled to the assistance of counsel in connection with a § 2255 motion in the

first place. The Supreme Court has "never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions . . . ." *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *see also Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (a petitioner cannot claim constitutionally ineffective assistance of counsel in a state post-conviction proceeding, as there is no constitutional right to an attorney in such proceeding); *United States v. MacDonald*, 966 F.2d 854, 859, 859 n. 9 (4th Cir.1992), *cert. denied*, 506 U.S. 1002, 113 S.Ct. 606, 121 L.Ed.2d 542 (1992) (citing *Finley*, 481 U.S. at 555, 107 S.Ct. 1990) ("Negligence or error in failing to raise a claim are not sufficient to show cause. . . . [W]here no Sixth Amendment right to counsel attaches to the proceeding, an ineffective assistance claim cannot be sustained. Prisoners have no right to counsel in a collateral proceeding."); *Hill v. Jones*, 81 F.3d 1015, 1024–25 (11th Cir.1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 967, 136 L.Ed.2d 851 (1997) (similar); *United States v. Angelone*, 894 F.2d 1129, 1130 (9th Cir.1990) (similar); *cf. Casas v. United States*, 88 F.Supp.2d 858, 860–61 (N.D.Ill.1999) (because defendants do not have a constitutional right to counsel when mounting collateral attacks, alleged ineffectiveness of habeas counsel is not grounds for tolling § 2255 statute of limitations).

Accordingly, Mr. Pollard's motion for re-sentencing was properly dismissed as a successive motion.

## C. Certificate of Appealability

■ Judge Johnson found that because Mr. Pollard "cannot satisfy the pre-AEDPA 'cause and prejudice' standard of *McCleskey*, the application of the AEDPA certification requirements to the second § 2255 motion of defendant is not impermissibly retroactive." *Pollard*, 161 F.Supp.2d at 8. Accordingly, Judge Johnson "decline[d] to entertain the motion of defendant at [that] time," a and Mr. Pollard "must first move in the appropriate Court of Appeals for an order authorizing the district court to consider the second § 2255 motion . . . ." *Pollard*, 161 F.Supp.2d at 8. However, as previously noted, on October 17, 2001 our Court of Appeals held in abeyance any appeal of Mr. Pollard's, pending disposition of the pending motions in this Court and this Court's determination of whether a COA is warranted.

In moving for issuance of a COA pursuant to 28 U.S.C. § 2253(c),[7] Mr. Pollard states that this Court should certify certain issues and sub-issues regarding whether Judge Johnson erred in dismissing the § 2255 motion without an evidentiary hearing. Mr. Pollard has couched his claims in alleged violations of constitutional rights, such as ineffective assistance of counsel, but closer inquiry reveals these

---

7. 28 U.S.C. § 2253(c) states:
 (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
 (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
 (B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

alleged violations to be merely procedural in nature.

The Supreme Court has recently spoken as to what is specifically required to obtain a COA:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that ... includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were " 'adequate to deserve encouragement to proceed further.' "

Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as [in Mr. Pollard's case], the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.... Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.

Determining whether a COA should issue where the petition was dismissed on procedural grounds has two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding. Section 2253 mandates that both showings be made before the court of appeals may entertain the appeal. Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments. The recognition that the "Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of" allows and encourages the court to first resolve procedural issues.

*Slack v. McDaniel*, 529 U.S. 473, 483–85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (citations omitted). Accordingly, this Court will first examine the procedural issues in this case before proceeding, if necessary, to the constitutional issues raised by Mr. Pollard.

Judge Johnson set forth a thorough and proper discussion of pre- and post-AEDPA jurisprudence and its applicability to Mr. Pollard's claims. *See* Pollard, 161 F.Supp.2d at 3–4. This Court approves of, adopts, and incorporates herein that discussion, since "a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Slack*, 529 U.S. at 484, 120 S.Ct. 1595. Accordingly, Mr. Pollard's request for a COA is denied.

## IV. CONCLUSION

For the reasons stated above, the Court will deny Defendant Pollard's Motion for "Reconsideration of the Court's August 7, 2001 Memorandum Opinion and Judgment, or in the Alternative, for Issuance of a Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)." An appropriate Order will accompany this Memorandum Opinion.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, Defendant Pollard's "Motion for Reconsideration of the Court's August 7, 2001 Memorandum Opinion [# 38] and Judgment [# 37], or in the Alternative, for Issuance of a Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)" [# 44] is **DENIED.**

**SO ORDERED.**