# HART v. UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

Argued March 25, 1886.—Decided April 26, 1886.

Under section 7 of the act of June 25, 1868, ch. 71, 15 Stat. 76, the Secretary of War transmitted a claim against the United States to the Court of Claims. That court found the claimant to be a person who had "sustained the late rebellion," and that the claim accrued before April 13, 1861, and as the payment of such a claim was forbidden by joint resolution No. 46, approved March 2, 1867, 14 Stat. 571, it decided that it had no jurisdiction to proceed to judgment on the reference made, but could only find the facts and dismiss the petition: *Held*, no error.

Although, before the joint resolution was passed, the claimant had received from the President a pardon "for all offences committed by him arising from participation, direct or implied, in the rebellion," the pardon did not authorize the payment of the claim, nor did the joint resolution take away anything which the pardon had conferred.

The case distinguished, as to the effect of the pardon, from *Ex parte Garland*, 4 Wall. 333; *Armstrong's Foundry*, 6 Wall. 766; *United States* v. *Padelford*, 9 Wall. 531; *United States* v. *Klein*, 13 Wall. 128, and *Carlisle* v. *United States*, 16 Wall. 147, 151.

The act of 1868 did not extend to claims covered by the joint resolution.

The case is stated in the opinion of the court.

*Mr John J. Weed* for appellant.

*Mr. Solicitor-General* for appellee submitted on his brief.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

Section 7 of the act of Congress, approved June 25, 1868, ch. 71, 15 Stat. 76, enacted as follows: "It shall and may be lawful for the head of any executive department, whenever any claim is made upon said department involving disputed facts or controverted questions of law, where the amount in controversy exceeds three thousand dollars; or where the decision will affect a class of cases or furnish a precedent for the future action of any executive department in the adjustment of a class of cases, without regard to the amount involved in the particular case; or where any authority, right,

privilege, or exemption is claimed or denied under the Constitution of the United States; to cause such claim, with all the vouchers, papers, proofs and documents pertaining thereto, to be transmitted to the Court of Claims, and the same shall be there proceeded in as if originally commenced by the voluntary action of the claimant. . . . *Provided, however*, That no case shall be referred by any head of a department unless it belongs to one of the several classes of cases to which, by reason of the subject-matter and character, the said Court of Claims might, under existing laws, take jurisdiction on such voluntary action of the claimant. And all the cases mentioned in this section which shall be transmitted by the head of any executive-department, . . . shall be proceeded in as other cases pending in said court, and shall, in all respects, be subject to the same rules and regulations; and appeals from the final judgments or decrees of said court therein to the Supreme Court of the United States shall be allowed in the manner now provided by law. The amount of the final judgments or decrees in such cases so transmitted to said court, where rendered in favor of the claimants, shall in all cases be paid out of any specific appropriation applicable to the same, if any such there be; and where no such appropriation exists, the same shall be paid in the same manner as other judgments of said court." These provisions are now embodied in sections 1063, 1064 and 1065 of the Revised Statutes.

Under them the Secretary of War, on the 14th of October, 1873, transmitted to the Court of Claims the claim of Henry B. Hart, as the assignee of Simeon Hart. Thereupon, on the 9th of January, 1874, Simeon Hart, for the use of Henry B. Hart, filed in that court a petition, claiming to recover from the United States $50,391.52. In July, 1874, the United States filed a plea setting up a counter-claim of $9000 against Simeon Hart, and in August, 1874, a plea setting up a bar by a six years' limitation after the first accruing of the claim. In December, 1874, Simeon Hart having died, the suit was revived in the name of A. B. Hyde, as his administrator. In January, 1877, the claimant demurred to the plea of the statute of limitation, and the demurrer was sustained. 12 C. Cl.

319. On the 9th of May, 1877, the claimant filed an amended petition, to which, three days afterwards, the United States filed a traverse, and a plea setting up a bar by a six years' limitation. In October, 1878, the claimant replied to the plea of counter-claim, that the $9000 had been paid by Simeon Hart. In November, 1879, the United States, by leave of court, filed a special demurrer to the petition and the amended petition, but it was overruled. In June, 1880, James P. Hague, as administrator of Simeon Hart, and successor of Hyde, was substituted in place of Hyde, as claimant. At the same time the claimant filed an amended petition, praying that any assignment of the claim to Henry B. Hart be treated as void, and withdrawing items four and five of the claim contained in the original petition.

The case was then heard, on the evidence, and on the 7th of June, 1880, the court filed its findings of fact and conclusions of law, and an opinion, 15 C. Cl. 414, whereby the petition was dismissed, and a judgment to that effect was entered on that day. In January, 1881, a motion for a new trial was granted, and the case was reheard, on additional evidence, and, on the 16th of May, 1881, the court filed its findings of fact and conclusions of law, and an opinion, 16 C. Cl. 459, whereby the petition was dismissed, and a judgment to that effect was entered on that day, from which the claimant appealed. Since the appeal Juan S. Hart, as administrator, in place of Hague, has been substituted as appellant.

The findings of fact, on the second hearing, which are quite voluminous, are set forth at length in the report in 16 C. Cl. Those which are material, in the view we take of the case, are as follows: On the 3d of March, 1861, Simeon Hart was residing at El Paso, Texas, and was in active sympathy with those who were inciting to rebellion. In April, 1861, he joined the insurgents, and then and afterwards furnished them with supplies, money, and means of transportation to carry on their invasion and campaign into New Mexico. On the 3d of November, 1865, the President granted to him a full pardon and amnesty for all offences committed by him arising from participation, direct or implied, in the rebellion. Hart claimed cer-

tain sums as due to him for flour, corn, and forage delivered to the United States before April 13, 1861, and certain sums for flour, corn, and forage delivered after that date. There is nothing due from the United States to the claimant for flour delivered after April 13, 1861; and the United States paid to Hart, or his assignees, for flour alleged to have been delivered after April 13, 1861, but never delivered, more than the amounts claimed as due for corn and forage, those payments being made partly in cash, and partly by retaining and charging against him the $9000 so set up as a counter-claim.

The Court of Claims applied to those demands of the claimant which accrued before April 13, 1861, the provisions of joint resolution No. 46, approved March 2, 1867, 14 Stat. 571, now embodied in section 3480 of the Revised Statutes, and which was as follows: "Until otherwise ordered, it shall be unlawful for any officer of the United States government to pay any account, claim, or demand against said government, which accrued or existed prior to the thirteenth day of April, A.D. eighteen hundred and sixty-one, in favor of any person who promoted, encouraged, or in any manner sustained the late rebellion; or in favor of any person who, during said rebellion, was not known to be opposed thereto, and distinctly in favor of its suppression; and no pardon heretofore granted, or hereafter to be granted, shall authorize the payment of such account, claim, or demand, until this resolution is modified or repealed: *Provided*, That this resolution shall not be construed to prohibit the payment of claims founded upon contracts made by any of the departments, where such claims were assigned or contracted to be assigned prior to April first, eighteen hundred and sixty-one, to creditors of said contractors, loyal citizens of loyal States, in payment of debts incurred prior to March first, eighteen hundred and sixty-one."

It was urged before the Court of Claims that the pardon and amnesty granted by the President to Hart, on the 3d of November, 1865, "for all offences committed by him arising from participation, direct or implied, in the rebellion," operated to set aside the provisions of the joint resolution as to him and

his claims. The court held otherwise. Its view was, that Hart was guilty of numerous acts for which he could, on conviction, have been punished in his person and his property, and that the pardon freed him from liability for those offences; that his disability to receive from the United States a debt due to him was not a consequence attached to or arising out of any such offence; that it grew out of the fact stated in the joint resolution, that he had been a public enemy; that every disability which a state of war imposed upon him was removed by the cessation of the war; that it needed no pardon to effect that result; that, as the pardon conferred on him no new right, so the joint resolution did not take from him anything which the pardon had conferred; that it did not, like the legislation considered in *United States* v. *Klein*, 13 Wall. 128, attempt to precribe to the judiciary the effect to be given to a pardon, in regard to a matter to which the pardon extended, but merely forbade certain debts to be paid until Congress should otherwise order; that a creditor of the United States can only be paid in accordance with the provision of the Constitution, Art. 1, sec. 9, subd. 7, which declares that " no money shall be drawn from the Treasury, but in consequence of appropriations made by law; " that by this joint resolution Congress had declared, by law, that this claimant should draw no money from the Treasury, and that no general appropriation should extend to his claim; that, therefore, no executive department could consider the claim; that the act of 1868 did not extend to claims covered by the joint resolution; and that, as the claim in question could not be paid, the Court of Claims had no jurisdiction to proceed to judgment in regard to it, on the reference made. The views of the court were set forth at great length in the opinion, and its conclusion was, that as to all items which accrued prior to April 13, 1861, it was its duty to decline to take jurisdiction further than to find the facts.

As to the items for flour and corn and forage furnished after April 13, 1861, the court held, on the facts it found, that there was nothing due to the claimant for flour delivered after that date; and that the United States had paid Hart, or his assignees, for flour alleged to have been delivered after

that date, but never delivered, more than the amounts now claimed to be due for corn and forage.

We are of opinion that the judgment of the Court of Claims was right. In approving, as we do, the reasons above cited as assigned by that court, for the view it took on the question of the pardon, we do not depart, in the least, from what was held, on the subject of pardons, in the cases of *Ex parte Garland*, 4 Wall. 333; *Armstrong's Foundry*, 6 Wall. 766; *United States* v. *Padelford*, 9 Wall. 531; *United States* v. *Klein*, 13 Wall. 128; and *Carlisle* v. *United States*, 16 Wall. 147, 151. If the joint resolution had said nothing on the subject of a pardon, no pardon could have had the effect to authorize the payment out of a general appropriation, of a debt which a law of Congress had said should not be paid out of it. The pardon cannot have such effect ascribed to it merely because the joint resolution says that it shall not have such effect. It was entirely within the competency of Congress to declare that the claims mentioned in the joint resolution should not be paid till the further order of Congress. It is now within its competency to declare that they may be paid, in like manner as, by the act of March 3, 1877, ch. 105, 19 Stat. 362, it provided that section 3480 of the Revised Statutes, which is the joint resolution in question, should not apply to payments to be made out of a general appropriation made by that act to pay mail contractors for mail service performed in certain States in 1859, 1860, and 1861, and before they "respectively engaged in war against the United States."

As to the claims which accrued after April 13, 1861, we see no reason to question the correctness of the judgment.

*Affirmed.*