# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 15, 2005         Decided July 22, 2005

No. 01-3103

UNITED STATES OF AMERICA,
APPELLEE

v.

JONATHAN JAY POLLARD,
APPELLANT

———

Consolidated with
01-3127, 03-3145

———

Appeals from the United States District Court
for the District of Columbia
(No. 86cr00207-01)

———

*Eliot Lauer* and *Jacques Semmelman* argued the cause and filed the briefs for appellant.

*Arthur B. Spitzer* and *G. Brian Busey* were on the brief for *amici curiae* American Civil Liberties Union of the National Capital Area, et al. supporting reversal.

*Mary B. McCord*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *John R. Fisher*, *Roy W. McLeese, III*, *Robert*

*D. Okun*, *Steven W. Pelak*, and *David B. Goodhand*, Assistant U.S. Attorneys. *Mary-Patrice Brown*, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, HENDERSON and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* ROGERS.

SENTELLE, *Circuit Judge*: Appellant Jonathan J. Pollard appeals from the dismissal of a second 28 U.S.C. § 2255 motion, collaterally attacking his 1987 life sentence on ineffective-assistance-of-counsel grounds, as requiring appellate certification under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), or, in the alternative, as untimely under that Act. Pollard also appeals from the district court's denial of his present counsel's petition for access to classified documents in his sentencing file for the purpose of filing a clemency petition with the President of the United States.

We find that no "jurist of reason" could dispute the district court's conclusion that Pollard's successive § 2255 motion is untimely, because he actually knew the necessary facts supporting his ineffective-assistance-of-counsel claims before 2000, and decline to grant a certificate of appealability ("COA") in his case. In light of this decision, we need not reach the issue of whether the district court was correct in ruling that Pollard should have sought certification from this Court before filing his second § 2255 motion.

Further, because we conclude that the federal courts lack jurisdiction to review claims for access to documents predicate

to Article II clemency petitions, we vacate the district court's denial of Pollard's motion to grant his current lawyers access to classified documents for the purposes of his clemency petition, and remand the motion for dismissal.

## I. Background

A. *Habeas Petition*

In 1986, Pollard pleaded guilty to conspiracy to deliver national defense information to a foreign government, in violation of 18 U.S.C. § 794(c), pursuant to a plea agreement in which the Government agreed not to ask for a life sentence, and to limit its allocution to the facts and circumstances of Pollard's offenses. Nonetheless, Chief Judge Robinson of the U.S. District Court for the District of Columbia sentenced Pollard to life in prison on March 4, 1987. After sentencing, Pollard's sentencing counsel, Richard Hibey, did not file a Notice of Appeal.

Subsequently, Pollard obtained new counsel, Hamilton Fox III. Working with Fox, Pollard filed a 28 U.S.C. § 2255 motion for the first time on March 12, 1990, that sought to withdraw his guilty plea on the grounds that the Government allegedly violated the terms of the plea agreement, by in effect seeking life imprisonment, attacking Pollard's character, and soft-pedaling the significance of his cooperation, through supplemental declarations and during its allocution. In that first habeas petition, Fox did not allege that Hibey had been ineffective in failing to file a Notice of Appeal, or object to the Government's alleged breaches at sentencing.

Chief Judge Robinson denied Pollard's petition on September 11, 1990, holding that the Government did not breach the plea agreement at sentencing. *United States v. Pollard*, 747 F. Supp. 797, 802-06 (D.D.C. 1990) ("*Pollard I*").

This Court affirmed that denial, holding that Pollard had failed to show a fundamental defect in the sentencing proceedings resulting in a complete miscarriage of justice, as required for Pollard to succeed with his collateral attack. *United States v. Pollard,* 959 F.2d 1011, 1032 (D.C. Cir. 1992) ("*Pollard II*").

Represented by a third set of counsel, Eliot Lauer and Jacques Semmelman, Pollard filed a second § 2255 motion on September 20, 2000, collaterally attacking his sentence on the basis that Hibey rendered ineffective assistance of counsel at the sentencing stage. This renewed effort, according to Pollard, was occasioned by a chance conversation with a fellow inmate, who "expressed surprise that apparently no appeal had been taken from [Pollard's] sentence." According to Pollard, this encounter led him to engage Lauer and Semmelman, who, he alleges, "advised [him], for the first time, of . . . material and prejudicial deficiencies in Mr. Hibey's representation . . . ."

Before the district court, Pollard urged that Hibey rendered ineffective assistance of counsel by (1) failing to file a Notice of Appeal, (2) failing to argue that the government breached the terms of its plea agreement, (3) failing to request that sentencing proceedings be adjourned after the government submitted a supplemental declaration by Caspar Weinberger (that allegedly amounted to an "indirect but unambiguous" request for a life sentence), (4) failing to request a hearing to address the allegations in the supplemental declaration, (5) failing to inform the sentencing court that Pollard had been authorized to give a jailhouse interview to CNN journalist Wolf Blitzer (which apparently figured into his sentencing), (6) failing to demand a hearing in which the Government would have to prove that Pollard disclosed classified information during that interview, and (7) by breaching attorney-client privilege to tell the sentencing court that Pollard had given the CNN interview against his advice. On August 7, 2001, the district court

dismissed on two alternative grounds. *United States v. Pollard*, 161 F. Supp. 2d 1 (D.D.C. 2001) ("*Pollard III*").

First, Judge Johnson held that Pollard's second § 2255 motion was subject to the AEDPA requirement that

"[a] second or successive motion . . . be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain – (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."

*Pollard III*, 161 F. Supp. 2d at 3-4, 5 (quoting 28 U.S.C. § 2255). This Judge Johnson held to be the case, despite the fact that Pollard was sentenced prior to AEDPA's passage. She relied upon and followed *United States v. Ortiz*, 136 F.3d 161, 166 (D.C. Cir. 1998), in which this Court held that applying AEDPA's standards and procedures for filing § 2255 motions retroactively is not improper unless a defendant can show that "he would have met the former cause-and-prejudice standard under *McCleskey* [*v. Zant*, 499 U.S. 467, 493 (1991)] and previously would have been allowed to file a second § 2255 motion, but could not file a second motion under AEDPA." *Pollard III*, 161 F. Supp. 2d at 4. Rejecting Pollard's argument that his second counsel, Fox, concealed Hibey's alleged deficiencies from Pollard out of "self-imposed restraint," Judge Johnson held that Pollard could not show cause for his failure to file the ineffective-assistance-of-counsel claim in his first § 2255 motion. *Id.* at 7. Nor could Pollard meet the alternative fundamental-miscarriage-of-justice standard. *Id.* Judge Johnson

therefore held that AEDPA's certification requirement did apply and that "[Pollard] must first move in the appropriate Court of Appeals for an order authorizing the district court to consider the second § 2255 motion." *Id.* at 8 (citing 28 U.S.C. § 2244(b)(3)).

Second, Judge Johnson held that Pollard's second § 2255 motion was time-barred because Pollard could not show that he qualified for a codified exception to AEDPA's statute of limitations (which in his case would have cut off the possibility of filing a § 2255 motion after April 24, 1997). *Id.* Judge Johnson rejected Pollard's argument that his § 2255 motion fell under the exception for prisoners whose appeals were based on "newly discovered facts," on the basis that "the discovery of the prevailing professional norms [does not] constitute[] the discovery of 'facts,'" and further, the facts underlying such a contention were either known or could have been discovered "through the exercise of due diligence" well before 2000. *Id.* at 9-10; 28 U.S.C. § 2255(4).

On October 5, 2001, Pollard applied to the district court for reconsideration of his § 2255 motion or, in the alternative, a COA. On November 12, 2003, Chief Judge Hogan denied reconsideration, affirming Judge Johnson's ruling substantially on the same grounds Judge Johnson had stated. *See United States v. Pollard*, 290 F. Supp. 2d 153, 163 (D.D.C. 2003) ("*Pollard IV*"). Chief Judge Hogan denied Pollard a COA, holding that "a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* at 164 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Pollard now appeals from the original district court decision, *Pollard III,* and seeks a COA from this court. He argues that the district court erred in holding that AEDPA's certification requirement applied to his case because he had

failed to show cause for his failure to assert Hibey's alleged ineffective assistance on direct appeal. Pollard reasserts the argument that Fox was constrained by an undisclosed conflict of interest–a factor external to the defense that Pollard argues should not be imputed to him–that kept Fox from raising an ineffective-assistance-of-counsel claim in Pollard's first § 2255 motion, and asks that this Court reverse and remand for an evidentiary hearing as to Fox's actions. Pollard also argues that the district court erred in holding that his new § 2255 motion was barred by AEDPA's statute of limitations because the facts upon which his claim was based were not, or should not have been, "newly discovered," asserting that "[t]he unusual circumstances of this case–in which the Government's misrepresentation about Hibey's performance, and Fox's whitewash [of that performance], affirmatively misled Pollard away from a meritorious claim of ineffective assistance–warrant an evidentiary hearing on the issue of Pollard's diligence" in discovering those supporting facts. Appellant's Br. at 40. Pollard asks that this Court reverse and remand for an evidentiary hearing to determine why Pollard did not discover the "facts" supporting his new claim until 2000. *Id.* at 39.

B. *Access to Classified Documents*

While Pollard's second § 2255 motion was pending, one of his new attorneys, Elliot Lauer, sought a court order granting him access to classified pre-sentencing materials in Pollard's file for the purpose of filing a clemency petition with the President of the United States. By way of background, relevant Justice Department regulations provide that

> [n]o person may be given access to classified information or material originated by, in the custody, or under the control of the Department, unless the person (1) [h]as been determined to be eligible for access in accordance with

> sections 3.1-3.3 of Executive Order 12968; (2) [h]as a demonstrated need-to-know; and (3) [h]as signed an approved nondisclosure agreement.

28 C.F.R. § 17.41(a). Executive Order 12,968, in turn, defines "need to know" as "a determination made by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function." 60 Fed. Reg. 19,825 § 4.1(c) (Apr. 17, 1995).

Before the district court, Pollard argued that Lauer had a "need to know" the contents of the documents in Pollard's pre-sentencing materials "so that . . . [counsel] may address and respond to arguments by those who oppose executive relief [for Pollard] on the basis of what is set forth in the sealed materials." The district court denied his motion on January 12, 2001, finding that Lauer did not have a need to know, because: (1) the President has access to the materials, (2) there is no evidence that the President has asked about (or needs to know about) information contained therein to make his clemency decision, and (3) the President has memoranda available to him from Pollard's previous attorney that make arguments based on the facts contained in those materials. *See* Memorandum Order of January 12, 2001.

Pollard appeals from this decision, as well, arguing before this Court that his new counsel demonstrated a "need to know" what was in those materials in order to prepare his clemency petition. Clemency, Pollard urges, "is a lawful and authorized governmental function" as contemplated by the definition of "need to know" in Executive Order 12,968. Lauer requires access, Pollard argues, "to rebut insinuations by opponents of clemency as to what the Materials contain, and to defuse the campaign of disinformation" he alleges has been mounted by his

opponents.  Appellant's Br. at 31.

## II. Discussion

A. *COA*

As enumerated above, Chief Judge Johnson denied Pollard's second § 2255 motion on two alternative procedural grounds: that (a) he lacked the certification required under 28 U.S.C. § 2244(b)(3) for filing a second successive § 2255 motion; and (b) that motion was untimely, regardless, because he could not show that he qualified for a codified exception to AEDPA's statute of limitations.  Chief Judge Hogan, having taken over the case, denied reconsideration, and denied a COA.

Habeas petitioners cannot appeal a district court's final order in a proceeding under § 2255 without a COA.  *See* 28 U.S.C. § 2253(c)(1).  Under *Slack v. McDaniel,* 529 U.S. 473, 484 (2000), where the district court dismisses the § 2255 motion on procedural grounds, a COA should issue only where (a) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and (b) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

Thus, to gain a COA, Pollard must show that a "jurist of reason" would find it debatable that both (1) the § 2244(b)(3) certification requirement does not apply in his case; and (2) the district court was incorrect in denying his § 2255 motion as untimely.  Because we find that no jurist of reason could disagree with the district court that Pollard's second § 2255 motion is time-barred, we need not reach the issue of whether the 28 U.S.C. § 2244(b)(3) certification requirement applies in his case.

AEDPA's statute of limitations gives prisoners one year to file a habeas petition, with certain enumerated exceptions. *See* 28 U.S.C. § 2255. Pollard argues that he qualifies for the exception for newly discovered facts, which tolls the deadline to one year from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," 28 U.S.C. § 2255(4), on the theory that he was unaware until 2000 of the possible ways in which he now alleges Hibey's assistance at sentencing was ineffective.

It could not have escaped Pollard's notice during the sentencing proceedings, at which he was present, that Hibey did not argue that the Government breached the terms of the plea agreement, request that sentencing proceedings be adjourned after the Government submitted the Weinberger declaration, inform the sentencing court that Pollard had authorization to give the Blitzer interview, or request a hearing to address the allegations in the supplemental declaration. Pollard's own declaration to the district court indicates that he knew that Hibey informed the sentencing court that Pollard had given the CNN interview against Hibey's advice. Knowing that, Pollard would have been aware that at sentencing Hibey did not demand a hearing for the Government to prove that Pollard disclosed classified information during that interview. *See Pollard III*, 161 F. Supp. 2d at 9 n.5. Finally, Pollard's first § 2255 motion, filed in 1990, indicates that he knew then that Hibey had not filed a Notice of Appeal. *Id*.

Nonetheless, Pollard argues that he still had no knowledge of those facts on the logic that "[i]f the defendant is unaware that the attorney should have performed a particular task, the defendant will not know of the attorney's omission[.]" Appellant's Br. at 49 (emphasis omitted). Going further, Pollard asserts that the logical follow-on of this is true–that "[t]he prevailing norms of the legal profession . . . are *facts*." *Id.* at 50

(emphasis in original).

This is simply nonsensical: Whether an attorney should have performed a particular task drives the *legal* inquiry into the existence of an ineffective-assistance-of-counsel claim. *See Florida v. Nixon*, 125 S.Ct. 560-63 (2004) (naming as "the inquiry generally applicable to ineffective-assistance-of-counsel claims: Did counsel's representation fall below an objective standard of reasonableness?") (quotation omitted). What the lawyer did or did not do in his representation of a prisoner is a "fact," defined for legal purposes as: "An actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation[.]" BLACK'S LAW DICTIONARY 7th Ed. at 610. Pollard knew the facts; what he now claims not to have known is the legal significance of these facts.

Having been a witness to his own sentencing proceedings and aware that Hibey did not file a Notice of Appeal, Pollard at most may not have realized the potential legal significance of those facts until 2000. Given that the vast majority of prisoners could, like Pollard does before us, allege ignorance of the law until an illuminating conversation with an attorney or fellow prisoner, Pollard's alternative construction–that legal norms constitute "facts" for the purposes of § 2255(4)–would in effect write the statute of limitations out of AEDPA, rendering it a nullity. This we will not do. *See, e.g., United States v. Barnes*, 295 F.3d 1355, 1364 (D.C. Cir. 2002) (rejecting an interpretation of text that would render the law a nullity, on the logic that a "statute should ordinarily be read to effectuate its purposes rather than frustrate them.") (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Ruckelshaus*, 719 F.2d 1159, 1165 (D.C. Cir. 1983)). As the Seventh Circuit puts it, for the purposes of § 2255(4), "[t]ime begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." *Owens v.*

*Boyd*, 235 F.3d 356, 359 (7th Cir. 2000).

For these reasons, we conclude that no jurist of reason could dispute the district court's conclusion that Pollard, as a participant in his own sentencing proceedings, knew the underlying facts that support his habeas claims. This conclusion alone prevents us from granting Pollard a COA under *Slack v. McDaniel*, *see* 529 U.S. at 484. We hasten to add, however, it is not at all clear that Pollard has made out a debatably valid claim of the denial of a constitutional right in this second § 2255 motion.

In particular, we find no indication that Hibey's decision not to file a Notice of Appeal from a sentence imposed after a guilty plea was not the norm among the defense bar at the time–which is, of course, the relevant time period, *see Strickland v. Washington*, 466 U.S. 668, 690 (1984) (instructing courts in ineffective-assistance cases to "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed *as of the time of counsel's conduct*[.]") (emphasis added). In fact, it was not until twelve years after Pollard's sentencing that the Supreme Court addressed the question of whether defense lawyers had a duty to file a Notice of Appeal for the first time, stopping short of holding that such a duty existed. *Doe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). Certiorari was granted in *Flores-Ortega* to resolve a split among the circuits on that issue that did not arise until 1991–four years after Pollard's sentencing–when the First Circuit became the first federal appeals court to rule that such a duty existed, in *United States v. Tajeddini*, 945 F.2d 458, 468 (1st Cir. 1991)–a case that was, of course, overturned by *Flores-Ortega* itself. We further note that in pre-guideline cases such as Pollard's successful appeals after guilty pleas were rare indeed.

Moreover, Pollard's second § 2255 motion is untimely even

assuming, as he contends, equitable tolling is available under AEDPA,[1] for he cannot demonstrate that "extraordinary circumstances beyond [his] control [made] it impossible to file a petition on time." *Cicero*, 214 F.3d at 203 (quoting *Calderon*, 128 F.3d at 1288) (internal quotation marks omitted). Pointing to caselaw holding that equitable tolling is available where "the [government's] conduct has somehow lulled the petitioner into inaction," *Curtiss v. Mt. Pleasant Correctional Facility*, 338 F.3d 851, 855 (8th Cir. 2003), where a petitioner was "actively misled," *Delaney v. Matesanz*, 264 F.3d 7, 15 (1st Cir. 2001), or where "an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary," *Baldayaque*, 338 F.3d at 152 (2d Cir.), Pollard maintains that his initial habeas counsel's alleged ethical breaches, combined with the government's alleged misrepresentations of his trial counsel's performance, require an evidentiary hearing to determine if equitable tolling is warranted. Pollard's allegations, however, do not rise to the level of unethical and outrageous behavior addressed in the cited cases, and there is no indication that the

---

[1] Eleven circuits have concluded that, under certain circumstances, equitable tolling of the statute of limitations in either § 2255 for federal prisoners and/or § 2244(d)(1) for state prisoners is possible. *See Neverson v. Farquharson*, 366 F.3d 32, 41 (1st Cir. 2004); *Baldayaque v. United States*, 338 F.3d 145, 150-51 (2d Cir. 2003); *Dunlap v. United States*, 250 F.3d 1001, 1008-09 (6th Cir. 2001); *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000); *Harris v. Hutchinson*, 209 F.3d 325, 329-30 (4th Cir. 2000); *Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999); *Sandvik v. United States*, 177 F.3d 1269, 1271-72 (11th Cir. 1999) (per curiam); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999); *Miller v. N.J. State Dep't of Corrections*, 145 F.3d 616, 617-18 (3d Cir. 1998); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998); *Calderon v. United States Dist. Court*, 128 F.3d 1283, 1288-89 (9th Cir. 1997). This circuit has yet to decide the question, *see United States v. Cicero*, 214 F.3d 199, 203 (D.C. Cir. 2000), and there is no need to do so here.

actions of either his initial habeas counsel or the Government made it impossible for him to file his second § 2255 motion within AEDPA's statute of limitations, as required. *See Cicero*, 214 F.3d at 203. As the district court noted, equitable tolling has been denied in far more grievous circumstances, as in *Cicero*, where the prisoner was unable to finish his legal research before the statute of limitations expired after being stabbed by another inmate, hospitalized, placed in protective segregation with highly limited access to a law library, and separated from his legal papers. *Id.* at 201, 203-04. Notwithstanding Pollard's claims that his habeas counsel failed to tell him about his trial counsel's allegedly deficient behavior and that the government advocated that his trial counsel was effective, there is nothing that prevented Pollard, a highly educated person who served as an Intelligence Research Specialist with the United States Navy prior to his arrest, from researching or further analyzing the facts that he knew to determine if they presented a valid claim.

B. *Counsel Access to Classified Documents*

The final aspect of Pollard's appeal, unrelated to his § 2255 motion, is whether the district court erred in declining to grant Pollard's current counsel access to classified materials in his pre-sentencing documents. Because we lack the authority to compel the executive branch to disclose any documents for the purposes of a clemency petition, we need not even reach the issue of whether Pollard's counsel has a need to know the contents of Pollard's classified pre-sentencing memoranda in order to submit an effective clemency petition.

As a practical matter, granting Pollard or his counsel access to these materials would almost surely open a floodgate of similar requests. It may be unusual for documents relating to a prisoner's clemency petition to be classified. But surely, most

federal prisoners who have run out of other avenues of appeal could, with some thought, conceive of something they could seek to discover from the Executive Branch that might be plausibly relevant to a clemency petition.[2] The undue burden such requests would impose on the Executive Branch alone cautions restraint. As the Supreme Court instructs, "[e]ven when a branch does not arrogate power to itself . . . the separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties." *Loving v. United States*, 517 U.S. 748, 757 (1996).

If due consideration for our co-equal branch counsels judicial restraint in this case, more fundamental constitutional principles absolutely dictate it. The Constitution entrusts clemency decisions to the President's sole discretion. U.S. CONST. art. II, § 2, cl. 1 (the President "shall have Power to grant Reprieves and Pardons for Offenses against the United States . . ."). Even when governed by legislation, such actions as regulatory enforcement and criminal prosecution, which are the "special province of the Executive Branch," are presumptively off-limits to the courts. *Heckler v. Chaney,* 470 U.S. 821, 832 (1985). Clemency, over which neither Congress nor the courts share any constitutional authority, is more properly the *exclusive* province of the Executive. As stated by

---

[2]The dissent's dismissal of the problem on the basis that the District Court has issued a protective order heretofore does nothing to forestall the actual possibility of such a floodgate breach. Even in the present case, the existence of the protective order does not change the custody of classified documents from the Executive to the Judiciary. Nor is there any principled way to limit the perceived right of access to documents needed for clemency to those that are under such a protective order. On the facts of this case, as we discuss in the text, appellant's only claim of access is based on the possibility of a clemency petition. For the reasons set forth in the text, that is insufficient.

Judge Learned Hand, "[i]t is a matter of grace, over which courts have no review[.]" *United States ex. rel. Kaloudis v. Shaugnessy*, 180 F.2d 489, 491 (2d Cir. 1950). Thus, it is entirely out of our power to compel discovery of or access to documents for the sake of a clemency petition. We therefore remand this final claim for dismissal for lack of jurisdiction.[3]

### III. Conclusion

For the reasons stated above, we deny Pollard's motion for a COA. Further, we vacate the district court's denial of Pollard's motion that his current counsel be granted access to classified documents among his presentencing materials for lack of jurisdiction, and remand the motion for dismissal.

---

[3]Our dissenting colleague correctly notes that the parties have not raised the jurisdictional question; however, we must nonetheless address it sua sponte. "Subject-matter delineations must be policed by the courts on their initiative even at the highest level." *Ruhrgas AG v. American Oil Co.*, 526 U.S. 574, 583 (1999) (citing and following *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) ("Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.")).

ROGERS, *Circuit Judge*, concurring in part and dissenting in part: I am in agreement with the court's denial of a certificate of appealability in No. 01-3127 to Jonathan Jay Pollard to contest the district court's dismissal of his second motion under 28 U.S.C. § 2255, and I therefore join Part II.A of the court's opinion. However, the court erects a jurisdictional bar in Nos. 01-3103 and 03-3145 to considering the request of Pollard's counsel for access to classified documents, which were filed with the district court during his sentencing and were sealed pursuant to a Protective Order, for use in preparing a clemency petition. Although the United States acknowledges that the documents are "subject to a court-issued Protective Order," Br. of Appellee at 42, and it therefore makes no jurisdictional challenge, *see id.* at 44 n.25, the court nevertheless hypothesizes a conflict with the President's clemency power under the Constitution, *see* Op. at 14-16. Neither Pollard's counsel's request to the district court nor the court's potential granting of it, however, poses interference with the President's clemency power. Whatever documents compiled for Pollard's sentencing that the district court might make accessible to his counsel for purposes of preparing a clemency petition, the President's process for considering clemency petitions and any decision he might make remain unimpaired; indeed, he can ignore the petition altogether. Rather than posing a jurisdictional bar, the President's clemency power affects the merits of counsel's request because, as the district court ruled, counsel has not shown a "need to know" under Executive Order 12,958, as amended, which has been incorporated into the Protective Order. Hence, under the "unusual circumstances of this case" where the Protective Order governs the requested documents, Br. of Appellee at 42, I would hold that the district court had jurisdiction to address the merits of the access motion and that the court did not err in denying the motion. I therefore respectfully dissent from Part II.B of the court's opinion.

**I.**

For purposes of preparing a clemency petition, Pollard's counsel seeks access to classified documents that were created for his sentencing, filed with the district court, and sealed pursuant to a Protective Order. The sealed documents include a Declaration of then-Secretary of Defense Caspar Weinberger, a memorandum personally prepared by Pollard, a memorandum prepared by Pollard's trial counsel, and the United States's reply. Pursuant to the Protective Order, persons not identified therein, such as Pollard's current counsel, may obtain access to the classified portions of the sentencing documents only after being granted the appropriate security clearance by the Department of Justice through the Court Security Officer, executing a Memorandum of Understanding prohibiting disclosure of such information, and obtaining the permission of the district court. The parties agree that as part of the security clearance process, a person must have a "need to know" the information contained in the classified documents as that phrase is defined in Executive Order 12,958, as amended, to mean "a determination made by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function." Exec. Order 13,292, 68 Fed. Reg. 15,315, 15,332 (Mar. 25, 2003).

In holding that the district court lacked jurisdiction to consider Pollard's counsel's motion for access to the classified documents under the Protective Order, the court concludes that counsel's expressed desire to use the documents for a clemency petition is determinative of the jurisdictional inquiry because the court "lack[s] the authority to compel the executive branch to disclose any documents for the purposes of a clemency petition." Op. at 14. The United States, however, did not urge this restrictive interpretation of the district court's jurisdiction and thus neither party briefed it. In fact, the United States

expressly stated on appeal that it "did not contest the district court's jurisdiction over the access issue in this case because the terms of the Protective Order reserve that role for the court." Br. of Appellee at 44 n.25. The court nevertheless proceeds *sua sponte* to resolve this dispute on novel jurisdictional grounds, and, in so doing, ignores the fact, undisputed by the parties and the record, that the documents at issue were created as part of a judicial process and are governed by the Protective Order. *Cf.* 18 U.S.C. app. III, § 3 (2000).

This case, therefore, does not involve the traditional request for access to classified documents that are within the Executive Branch's possession, and hence, the court's concern that exercising jurisdiction over the access motion could open the floodgates to similar motions, *see* Op. at 14-15, is misplaced. Further, as the United States acknowledged at oral argument, protective orders now are drafted "more carefully . . . to circumscribe their use more directly to the . . . criminal case, and not for other purposes," Tr. of Proceedings (Mar. 15, 2005), and, thus, it is quite unlikely that courts will be confronted with even a trickle, much less a flood, of similar requests. Although the documents are nominally in the custody of the Justice Department's Security and Emergency Planning Staff, the district court, as the United States acknowledges, has continuing control over them on account of the perpetual Protective Order that it may still enforce through its contempt power. *See Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 781-82 (1st Cir. 1988); *cf. Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). "[A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court," *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993), and "[s]o long as [the court's records and files] remain under the aegis of the court, they are superintended by judges who have dominion over the court," *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141 (2d Cir. 2004). Thus, in the absence of legitimate

separation-of-powers concerns, the district court, under these circumstances, had jurisdiction to adjudicate the access motion, for otherwise it would be in the untenable position of lacking jurisdiction over motions that relate to documents that were filed with it and over which it has continuing control. Although the court professes to be unable to find a "principled way" to limit the potential right of access to documents filed pursuant to a Protective Order, Op. at 15 n.1, as is clear from the above cases, the principle is that the Protective Order results in the district court's retention of control, and thus jurisdiction, over the documents at issue so long as there is no violation of the separation of powers.

To reach its jurisdictional conclusion, the court imagines a conflict between that President's clemency power and the district court's exercise of jurisdiction over the request for access to documents. It is undeniable that the President's constitutional power to grant clemency is robust, U.S. CONST. art. II, § 2, cl. 1, and that courts long have been loathe to review the President's clemency decisions, *see, e.g.*, *Schick v. Reed*, 419 U.S. 256, 260 (1974); *United States v. Klein*, 80 U.S. 128, 147-48 (1871); *cf. Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 284 (1998) (plurality); *id.* at 289 (O'Connor, J., joined by Souter, Ginsburg, and Breyer, JJ., concurring in part and concurring in the judgment). The President's clemency power, however, is not absolute; rather, it is limited by other constitutional provisions. *Schick*, 419 U.S. at 266-67. In reviewing clemency decisions to ensure that they comport with other constitutional protections, the Supreme Court has never suggested that federal courts lack jurisdiction over such matters, let alone over matters where a prisoner's counsel seeks access to documents filed with the district court for use in petitioning for executive clemency. *See, e.g.*, *id*; *Hart v. United States*, 118 U.S. 62, 67 (1886); *Knote v. United States*, 95 U.S. 149, 154 (1877); *Ex parte Garland*, 71 U.S. 333, 381 (1866); *Ex parte*

*Wells*, 59 U.S. 307, 312 (1855).

At the same time, the Supreme Court has cautioned courts "to avoid *interference* with the . . . clemency powers vested in the Executive Branch," *Affronti v. United States*, 350 U.S. 79, 83 (1955) (emphasis added), and has stated that "pardon and commutation *decisions* . . . are rarely, if ever, appropriate subjects for judicial review." *Conn. Bd. of Pardons v. Dumshcat*, 452 U.S. 458, 464 (1981) (emphasis added). While "the separation-of-powers doctrine requires that a branch not *impair* another in the performance of its constitutional duties," *Loving v. United States*, 517 U.S. 748, 757 (1996) (emphasis added), the court today never explains how the district court's exercise of jurisdiction over the access motion impairs or interferes with the President's clemency power, and, indeed, it cannot because the motion does not involve the President's constitutional prerogative to grant clemency or even the process by which the President decides whether or not to grant clemency, *cf. Affronti*, 350 U.S. at 83; *United States v. Moussaoui*, 382 F.3d 453, 468-69 (4th Cir. 2004). Nor did the United States suggest to the contrary in response to the court's jurisdictional observation during oral argument. The access motion does not relate to the President's decision regarding clemency, as he remains free to review, ignore, act on, or fail to act on any petition for clemency that Pollard's counsel might file, regardless of whether a court determines that his counsel may have access to classified documents to prepare such a petition. Thus, the President's constitutional duty is not only unimpaired by the access motion, it is wholly unaffected by it. *Cf. Razzoli v. Fed. Bureau of Prisons*, 230 F.3d 371, 376 (D.C. Cir. 2000).

Neither of the two cases relied on by the court for its novel jurisdictional holding have force in this context, for at most they support an undisputed proposition that the President's clemency

power is fulsome, subject to few limits. Judge Learned Hand's statement about the clemency power in *United States ex rel. Kaloudis v. Shaughnessy*, 180 F.2d 489, 491 (2d Cir. 1950), is not as unqualified as the court suggests, for the judge acknowledged some limits, and, in any event, it is dictum in a case concerning the Attorney General's discretionary power to suspend deportation. *Heckler v. Chaney*, 470 U.S. 821 (1985), with its discussion of regulatory enforcement actions, is plainly distinguishable, for while the Supreme Court held that decisions not to initiate enforcement actions are presumptively unreviewable under the Administrative Procedure Act because they are "committed to agency discretion," *id.* at 832 (quoting 5 U.S.C. § 701(a)(2)), the Court went on to hold that "the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers," *id.* at 832-33. In erecting a jurisdictional bar that precludes federal court review of access motions to classified documents when the asserted reason for access is to assist in the preparation of a clemency petition, the court, unlike the Supreme Court in *Chaney*, fails to look to the underlying legal regime in the Protective Order to determine whether relief is available.

If the requested documents were not subject to the Protective Order, then the United States maintains Pollard would be required to proceed under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000). Caselaw under FOIA fails to reveal any suggestion that it is beyond the power of the federal courts to entertain requests for Executive Branch documents related to clemency proceedings. In fact, courts have analyzed requests for the Executive Branch to release documents related to individual clemency applications under FOIA, relying on the statutory exemptions to deny release of certain documents, but never raising any jurisdictional concerns. *See, e.g.*, *Binion v. U.S. Dep't of Justice*, 695 F.2d 1189, 1193-94 (9th Cir. 1983);

*Crooker v. Office of Pardon Attorney*, 614 F.2d 825, 828 (2d Cir. 1980). While no case has expressly addressed the jurisdictional issue, as with analogous FOIA requests for information related to clemency proceedings, the request by Pollard's counsel for access should be viewed under the regulatory regime in place to address those requests. The inconsistency between the federal courts exercising their power to adjudicate FOIA requests for information generated or compiled by the Executive Branch during the clemency process and federal courts lacking the power to adjudicate requests for access to documents filed with the district court that may be used in preparing a clemency petition is self-evident.

Moreover, when the court addressed the application of FOIA to general information about the clemency process, there was no hint of any jurisdictional obstacles. In *Judicial Watch, Inc. v. Department of Justice*, 365 F.3d 1108 (D.C. Cir. 2004), the court refused to apply the presidential communications privilege, which is derived from separation-of-powers concerns and anchored in FOIA Exemption 5, 5 U.S.C. § 552(b)(5), to protect all documents authored by Executive Branch employees that are generated in the course of preparing clemency recommendations for the President. The court reasoned that the documents that were prepared in the Office of the Pardon Attorney were not in close proximity to the President and the exercise of his clemency power to warrant protection under the presidential communications privilege. 365 F.3d at 1114-15, 1120. The documents here are even farther removed from the President and the exercise of his clemency power, as they were generated in the course of a judicial proceeding and their use by Executive Branch employees in the clemency process is speculative at best. It is curious that the court relies on separation-of-power principles to preclude federal court review, ignoring the logical implications of our precedent. Because I conclude there is no jurisdictional bar to the court's

consideration of the access motion, I turn to the merits.

## II.

The district court ruled that Pollard's counsel did not have a "need to know" because the President has access to the classified documents and can review them without assistance, there is no evidence that the President has asked Pollard's counsel questions about the contents of the classified documents, and the President has access to memoranda from Pollard's previous counsel that comments on the classified documents. The district court denied Pollard's motion for reconsideration, as well as his subsequent motion for modification. On appeal, the parties agree that the only issue as to the access motion is whether Pollard's counsel has a "need to know" the contents of the classified documents. Whether the district court's denial of access is reviewed *de novo* as a legal determination, as Pollard argues, *cf. Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002); *United States v. Idaho*, 210 F.3d 1067, 1072 (9th Cir. 2000), or for abuse of discretion, as the United States argues, *cf. United States v. Rezaq*, 134 F.3d 1121, 1142-43 (D.C. Cir. 1998), Pollard fails to show that the district court erred.

Although the President's "quintessential and non-delegable" power to grant clemency does not affect the court's jurisdiction in this instance, *Judicial Watch*, 365 F.3d at 1119, it significantly affects Pollard's contention that his counsel has a "need to know" the contents of the classified documents filed with the district court. The "need-to-know" standard, which the parties agree is implicitly incorporated into the Protective Order, authorizes access to specified classified information only where one "requires access . . . in order to perform or assist in a lawful and authorized governmental function." Exec. Order 13,292, 68 Fed. Reg. 15,315, 15,322. The President's decision to grant or to deny clemency is such a function. *See* U.S. CONST. art. II, §

2, cl. 1; *Biddle v. Perovich*, 274 U.S. 480, 486 (1927). In seeking to justify access as necessary "[t]o submit an effective clemency petition," Br. of Appellant at 31, Pollard, however, conflates his petition for clemency with the President's decision to grant or to deny clemency, much as the court does in erecting a jurisdictional bar; it is only the President's decisionmaking process that is "a lawful and authorized *governmental* function." Therefore, to come within the "need-to-know" standard, Pollard's counsel must require access to assist the President's determination and not simply to assist his client, which, by contrast, would be in the nature of a private act.

Simply asserting that one's assistance is needed does not make it so, especially since executive clemency is a matter of grace, *Woodard*, 523 U.S. at 280-81 (plurality), such that the President controls the process by which such decisions are made. The Justice Department's pardon regulations, 28 C.F.R. §§ 1.1, 1.11 (2005), do not afford Pollard's counsel a right to assist the President in making his clemency decision, let alone, as Pollard seems to seek, an opportunity to present an "effective petition" in response to the claimed unyielding opposition of Executive Branch officials to granting him clemency. Similarly, Executive Order 12,958, as amended, does not provide his counsel a right of access equal to that of attorneys within the Justice Department or an enforceable right to access classified documents under the Protective Order. *See* Exec. Order 13,292, 68 Fed. Reg. 15,315, 15,333. Further, absent the Protective Order, his counsel could not gain access to classified documents under FOIA, regardless of the status of counsel's security clearance. *See* 5 U.S.C. § 552(b)(1). Thus, if Pollard's counsel desires to assist the President's clemency determination, then under the "need-to-know" standard, the President must seek his assistance and thereby involve counsel in the "lawful and authorized governmental function." The record, however, does not reveal that either the President, who himself has access to

the classified information, or his designee has sought the assistance of Pollard's counsel in considering the request for executive clemency.

Consequently, although the district court's adjudication of the access motion, even if it would have ordered access, does not itself infringe on the separation of powers, the nature of executive clemency as a matter of Presidential grace means that under the "need-to-know" standard governing access to classified information under the Protective Order, it cannot be said that counsel requires access to assist the President. Whatever bias may exist against his cause, Pollard can point to no authority that would enable his counsel, under these circumstances, to have access to the classified documents he would require to present an "effective petition." Accordingly, I would affirm the judgment denying the access motion based on the district court's determination that Pollard's counsel does not have a "need to know."